953 F.2d 68
 Edward J. BLAKE, Hon., President Judge of the Philadelphia
Court of Common Pleas
v.
Nicholas P. PAPADAKOS, Hon., Justice of the Supreme Court of
Pennsylvania; Ralph J. Cappy, Hon., Justice of the Supreme
Court of Pennsylvania; Robert N.C. Nix, Jr., Hon., Chief
Justice of the Supreme Court of Pennsylvania; Rolf Larsen,
Hon., Justice of the Supreme Court of Pennsylvania; John P.
Flaherty, Hon., Justice of the Supreme Court of
Pennsylvania; James T. McDermott, Hon., Justice of the
Supreme Court of Pennsylvania; Stephen A. Zappala, Hon.,
Justice of the Supreme Court of Pennsylvania; Honorable
Nicholas P. Papadakos, Honorable Ralph J. Cappy, Honorable
Robert N.C. Nix, Jr., Honorable Rolf Larsen, Honorable John
P. Flaherty, Honorable James T. McDermott and Honorable
Stephen A. Zappala, Appellants.
 No. 91-1537.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 10, 1991.
Decided Jan. 8, 1992.
 
 David M. Donaldson (argued), A. Taylor Williams, Administrative Office of PA Courts, Philadelphia, Pa., for appellants.
 Perry S. Bechtle (argued), Conrad O. Kattner, Sally J. Garber, LaBrum & Doak, Philadelphia, Pa., for appellee.
 Before BECKER, GREENBERG and GARTH, Circuit Judges.OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This appeal brings before us for review an order of the District Court which enjoined the Pennsylvania Supreme Court from taking any acts diminishing the power of the President Judge of the Philadelphia County Court of Common Pleas.
 
 
 2
 The Honorable Edward J. Blake, President Judge of the Philadelphia County Court of Common Pleas, brought an action in the Pennsylvania Supreme Court claiming that the Justices of the Pennsylvania Supreme Court had violated Pennsylvania law and the Due Process Clause of the United States Constitution by depriving him of essential administrative powers and by usurping for the Pennsylvania Supreme Court powers that traditionally had been functions of the office of President Judge. The Pennsylvania Supreme Court issued an opinion and order which upheld the challenged order of December 19, 1990 and which declared that the Court's challenged exercise of supervisory power violated neither federal nor state law. See In re Petition of Hon. Edward J. Blake, et al., 527 Pa. 456, 593 A.2d 1267 (1991) (per curiam). Judge Blake thereupon filed an action in the United States District Court for the Eastern District of Pennsylvania to enjoin the Pennsylvania Supreme Court from exercising the powers of his office.
 
 
 3
 Because we conclude that the district court's exercise of subject matter jurisdiction in this case constituted an impermissible review by a federal court of a final adjudicative determination of a state's highest court, we will vacate the preliminary injunction entered by the District Court and remand this case with an instruction to dismiss Judge Blake's complaint for lack of subject matter jurisdiction.
 
 I.
 
 4
 On December 18, 1990, the Board of Judges of the Philadelphia County Court of Common Pleas elected Judge Edward Blake to the office of President Judge of the Court of Common Pleas for a five-year term in accordance with the Pennsylvania Constitution, Art. V §§ 5 & 10(d). The next day, the Pennsylvania Supreme Court issued an order designating two Supreme Court Justices, appellants Papadakos and Cappy, to act with "full authority to approve, implement and monitor all changes deemed necessary and proper until further Order of this Court" as to all "administrative" and "budgetary" matters within the Philadelphia County Court of Common Pleas. The order stated:
 
 
 5
 AND NOW, to-wit, this 19th day of December, 1990, MR. JUSTICE RALPH J. CAPPY is assigned to the task of overseeing the reformation of the Administrative Structure of the Courts of the First judicial district with the full authority to approve, implement and monitor all changes and reforms deemed necessary and proper until further order of this Court.
 
 
 6
 MR. JUSTICE NICHOLAS P. PAPADAKOS is assigned to the task of overseeing the Budgetary Structure of the Courts of the First Judicial District with the full authority to approve, implement and monitor all changes deemed necessary and proper to their budgets and to insure that such changes bring about fiscal responsibility for the Judicial District until further order of this court.
 
 
 7
 The Board of Judges of the Philadelphia County Court of Common Pleas, displeased with the Justices' apparent incursion on Judge Blake's authority, adopted a Resolution in March, 1991 affirming their selection of Judge Blake as President Judge and requesting that the Pennsylvania Supreme Court restore to Judge Blake the powers inherent in his position. Justice Papadakos, apparently on behalf of the Pennsylvania Supreme Court, rejected that request by letter on March 18, 1991.
 
 
 8
 Pursuant to the Pennsylvania Supreme Court's December 19, 1990 order, Justice Papadakos directed Judge Blake to transfer 59 of Judge Blake's 65 staff employees to the supervision of the Administrative Judge of the Trial Division. Justice Papadakos apparently also directed the termination of approximately 200 court employees.
 
 
 9
 On April 22, 1991, Judge Blake and the Board of Judges filed a Petition with the Pennsylvania Supreme Court urging the Court to set aside its December 19, 1990 order. Judge Blake and the Board maintained that the Justices' exercise of supervisory authority over the Court of Common Pleas violated the Pennsylvania Constitution (which created the position of President Judge and requires that the President Judge be a judge on the Court of Common Pleas) and the Due Process Clause of the United States Constitution.
 
 
 10
 On May 8, 1991, the Pennsylvania Supreme Court issued an order denying the Petition. The order stated that written opinions would follow. On June 27, 1991, the Pennsylvania Supreme Court filed an opinion explaining and supporting its May 8, 1991 order. See In re Petition of Hon. Edward J. Blake, et al., 527 Pa. 456, 593 A.2d 1267 (1991) (per curiam).[1] On the same day, Judge Blake sought relief in the United States District Court for the Eastern District of Pennsylvania, again raising his arguments under the Pennsylvania and United States Constitutions.
 
 
 11
 The opinion of the Supreme Court of Pennsylvania, in rejecting Judge Blake's Petition, called attention to Article V § 10(a) of the Pennsylvania Constitution, which provides:
 
 
 12
 The Supreme Court shall exercise general supervisory and administrative authority over all the courts ...
 
 
 13
 The Court explained that pursuant to this Constitutional mandate, the Justices had observed, and become increasingly uneasy with, the administration of the Philadelphia courts. In particular, the Court had come to believe that "the sixty-five member staff under President Judge Blake duplicates the functions performed by the administrative judges and their staffs, and is thus in large part expendable." The Court explained that "after lengthy respite to allow the [Court of Common Pleas] to reform itself, with no appreciable improvement," the Court saw fit to appoint Justices Papadakos and Cappy to exercise a direct administrative role.
 
 
 14
 The Court next addressed Judge Blake's argument that appointment of Justices Papadakos and Cappy had usurped the powers that Pennsylvania's Judicial Code had conferred upon Judge Blake. The Code provides that:
 
 
 15
 [e]xcept as otherwise provided or proscribed by this title, by general rule, or by order of the governing authority, the president judge of a court shall:
 
 
 16
 (1) Be the executive and administrative head of the court, supervise the judicial business of the court, promulgate all administrative rules and regulations, make all judicial assignments, and assign and reassign among the personnel of the court available chambers and other physical facilities.
 
 
 17
 (2) Exercise the powers of the court under section 2301(a)(2) (relating to appointment of personnel).
 
 
 18
 42 Pa.C.S.A. § 325(e)(1). Section 2301(a)(2) provides that the President Judge:
 
 
 19
 may appoint and fix the compensation and duties of necessary administrative staff and fix the compensation of personal staff.
 
 
 20
 42 Pa.C.S.A. § 325(e)(2); 42 Pa.C.S.A. § 2301(a)(2).
 
 
 21
 The Pennsylvania Supreme Court responded to Judge Blake's Petition by pointing out that 42 Pa.C.S.A. § 325(e)(1), which defines the powers of the President Judge, provides in its preamble "[e]xcept as otherwise provided ... by general rule or by order of the governing authority...." The Judicial Code defines "governing authority" as "[t]he [Pennsylvania] Supreme Court" or its delegates. 42 Pa.C.S.A. § 102. Thus, the Court held, the Pennsylvania Judicial Code preserves for the Pennsylvania Supreme Court the power to alter the duties of President Judges whenever the Pennsylvania Supreme Court sees fit. The Pennsylvania Supreme Court explained that the order of December 19, 1990 and the subsequent directives of Justice Papadakos concorded with this statutory authority as well as with the Court's general supervisory and administrative authority over the unified judicial system under Pa. Const. Art. V § 10(a).
 
 
 22
 The Pennsylvania Supreme Court went on to reject Judge Blake's argument that the December 19, 1990 order had deprived him of Due Process under the United States Constitution. Judge Blake claimed that he had been denied due process because he had not been given benefit of notice and a hearing prior to the order of December 19, 1990. Because constitutionally protected property interests stem from state law, and in this case state law provided Judge Blake with no inherent constitutional or statutory powers that are not subject to the supervisory authority of the Pennsylvania Supreme Court, the Pennsylvania Supreme Court held that Judge Blake had "been deprived of no right or interest" that might trigger the Due Process Clause. In re Petition of Hon. Edward J. Blake, et al., 527 Pa. at 461, n. 2, 593 A.2d 1267.
 
 
 23
 After receiving the Pennsylvania Supreme Court's written opinion, Judge Blake filed an action in the District Court for the Eastern District of Pennsylvania. The following day, the District Court held a hearing to determine whether to grant Judge Blake's request for a preliminary injunction. Judge Blake maintained that Justice Papadakos's directives had harmed the Office of the President Judge by decreasing the number of court employees to a dangerously low level and by allowing private custodial workers to clean private chambers without the permission of Judge Blake or of the Board of Judges over which Judge Blake presides.
 
 
 24
 The District Court granted Judge Blake's request for a preliminary injunction "until a final hearing in this matter or until Petitioner, President Judge Edward J. Blake, has been afforded a due process notice and hearing [by the Pennsylvania Supreme Court]." The District Court did not reverse any actions theretofore taken by Justices Papadakos and Cappy but did enjoin all further acts "eroding the power of the office of the President Judge of the Philadelphia Court of Common Pleas." (A. 9a).
 
 
 25
 The District Court judge explained from the bench that Judge Blake possessed both a liberty and a property interest in his position as President Judge and that Judge Blake therefore had a constitutional right to notice and a hearing before any action could be taken that narrowed the scope of his authority. The District Court recognized that the Pennsylvania Supreme Court had already ruled on Judge Blake's petition but held that the Pennsylvania Supreme Court's order and opinion constituted an administrative act, as distinct from an adjudicative act, and therefore did not preclude federal jurisdiction from attaching to Judge Blake's complaint. The District Court refused to stay its preliminary injunction. (A. 8a).
 
 II.
 
 26
 Pursuant to the Rooker- Feldman doctrine, federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are "inextricably intertwined with the state court's [decision] in a judicial proceeding." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). See also Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747-48, 26 L.Ed.2d 234 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions.").[2] Thus, if the Pennsylvania Supreme Court's decision was an adjudication, only the United States Supreme Court may entertain Judge Blake's challenge to the Pennsylvania Supreme Court's rejection of his Petition. See 28 U.S.C. § 1257.
 
 
 27
 Judge Blake argues that the Pennsylvania Supreme Court's rejection of his Petition constituted an administrative, or non-adjudicative, act and that therefore the Rooker- Feldman doctrine, which applies only to adjudicative acts, does not preclude federal jurisdiction in this case. He bases his argument on the fact that, other than his Petition which was before the Pennsylvania Supreme Court, that court had no record to review, held no hearing and conducted no argument. We cannot agree. We have no difficulty in concluding that the Pennsylvania Supreme Court's order constituted an adjudicative act as explained in Feldman.
 
 
 28
 In Feldman, two lawyers who wished to take the District of Columbia bar examination filed Petitions in the District of Columbia Court of Appeals requesting waivers of a bar-admission rule that required applicants to have graduated from an ABA-approved law school. The District of Columbia Court of Appeals issued orders denying the lawyers' Petitions. The lawyers then filed complaints in the United States District Court for the District of Columbia, raising Constitutional and statutory challenges to the District of Columbia Court of Appeals' denial of their waiver Petitions. The District Court dismissed their complaints for lack of subject matter jurisdiction. On appeal, the United States Court of Appeals for the District of Columbia Circuit reversed the United States District Court and remanded on the theory that the District of Columbia Court of Appeals had acted in a non-adjudicative capacity.
 
 
 29
 However, the United States Supreme Court vacated the judgment of the United States Court of Appeals for the District of Columbia Circuit and held that the orders of the District of Columbia Court of Appeals had constituted adjudicative acts which precluded subsequent federal review. The Supreme Court explained that adjudicative acts involve the application of existing laws to the facts in a particular case. See Feldman, 460 U.S. at 479, 103 S.Ct. at 1313.
 
 
 30
 The Supreme Court explained that administrative/non-adjudicative acts, in contrast, generally require not the application of existing laws to particular facts but rather "look[ing] into the future and chang[ing] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." Id., at 477, 103 S.Ct. at 1312, quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). Because the Court of Appeals for the District of Columbia had applied its local rule, i.e., its existing law, to the particular facts surrounding the lawyers' waiver Petitions, its orders necessarily were adjudicative in nature and could not be reviewed by a federal court.[3]
 
 
 31
 The distinction drawn in Feldman between adjudicative and non-adjudicative acts was applied by us in Stern v. Nix, 840 F.2d 208 (3rd Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988). Stern, a former member of the Pennsylvania bar who had been disbarred by the Supreme Court of Pennsylvania, brought suit in the District Court for the Eastern District of Pennsylvania in an attempt to stay the Pennsylvania Supreme Court order that had disbarred him. The District Court denied Stern's application and Stern appealed.
 
 
 32
 We held that the District Court should have dismissed Stern's complaint for lack of subject matter jurisdiction pursuant to the Rooker- Feldman doctrine. Stern, like Judge Blake, argued that Rooker- Feldman did not preclude federal jurisdiction over his case because, in Stern's view, the Pennsylvania Supreme Court's order had been an administrative, and not adjudicative, order. We rejected that characterization of the Pennsylvania Supreme Court's order and explained that despite Stern's attempt to draft his complaint in the form of a general challenge to a state court rule, in reality Stern sought review of the Pennsylvania Supreme Court's adjudicative determination that existing laws, when applied to the particular facts in Stern's case, required Stern's disbarment.
 
 
 33
 The case before us provides a good example of the difference between adjudicative and non-adjudicative acts as explained in Feldman. The Pennsylvania Supreme Court's May 8, 1991 order constituted an adjudicative act because the Court, in reaching its decision to reject Judge Blake's federal and state law claims, applied existing laws to Judge Blake's particular case.[4] Therefore, as the Feldman Court explained, only the United States Supreme Court possesses jurisdiction to review that order.
 
 
 34
 Although the December 19, 1990 order may have been administrative in content, in the sense that it concerned staff positions, budgets and other administrative reforms, the relevant question to be answered is whether the Pennsylvania Supreme Court reached a decision as to that order based upon existing law. An examination of the opinion rendered by the Pennsylvania Supreme Court reveals that it did. The Pennsylvania Supreme Court relied upon and analyzed the Pennsylvania Constitution and Pennsylvania statutes in determining that the December 19, 1990 order was properly promulgated. (A. 162a-184a). In reaching its decision, the fact that no hearing or oral argument was held and no record developed was as immaterial here as it was in Feldman: "[t]he form of the proceeding is not significant. It is the nature and effect which is controlling." See Feldman, 460 U.S. at 482, 103 S.Ct. at 1314, quoting In re Summers, 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1945).
 
 
 35
 Had Judge Blake not instituted his action challenging the December 19, 1990 order in the Pennsylvania Supreme Court but instead had he filed his action directly in the United States District Court, the Rooker- Feldman doctrine could not have precluded federal jurisdiction, as no adjudication by the Pennsylvania courts would then have preceded the federal action. But by challenging the Pennsylvania Supreme Court's action before that very court, Judge Blake elected his remedy. If he remains aggrieved, his recourse is now to the state legislature in Harrisburg.[5]
 
 III.
 
 36
 We will vacate the district court's grant of preliminary injunction and remand the case with instructions to dismiss President Judge Blake's complaint for lack of subject matter jurisdiction. Each party will bear its own costs.
 
 
 
 [1]
 Justice Flaherty filed a concurring opinion. Justice Papadakos joined both the per curiam opinion and Justice Flaherty's concurrence. Chief Justice Nix filed a dissenting opinion in which Justice McDermott joined. Justice McDermott filed a dissenting opinion in which Chief Justice Nix joined
 
 
 [2]
 The habeas corpus jurisdiction of the lower federal courts is a constitutionally authorized exception to the principle of Rooker-Feldman. See Sumner v. Mata, 449 U.S. 539, 543-44, 101 S.Ct. 764, 767-68, 66 L.Ed.2d 722 (1981) ("even a single federal judge may overturn the judgment of the highest court of a State" in adjudicating a petition for habeas corpus relief)
 
 
 [3]
 The other case from which the Rooker- Feldman doctrine derived its name, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), involved the same principle, but in a different context. In Rooker, the Indiana Supreme Court had affirmed a civil judgment rendered in an Indiana trial court. The party against whom the civil judgment had been rendered brought suit in the United States District Court for the District of Indiana and argued that the Indiana judgment had been rendered and affirmed in contravention of the United States Constitution because the judgment had given effect to an unconstitutional statute and had failed to give effect to a prior decision by the Indiana Supreme Court. The District Court dismissed the suit for lack of jurisdiction. On direct appeal to the United States Supreme Court, the Supreme Court affirmed the District Court's dismissal of the case and explained that federal district courts do not have jurisdiction to review adjudications of a state's highest court. Rooker, however, was not as explicit as Feldman in distinguishing between adjudicative and non-adjudicative acts
 
 
 [4]
 The order of the Pennsylvania Supreme Court was even more clearly adjudicative than were the orders in Feldman because the Pennsylvania Supreme Court, unlike the Court of Appeals for the District of Columbia, provided a detailed discussion of relevant law and its application. See In re Petition of Hon. Edward J. Blake, et al., 527 Pa. 456, 593 A.2d 1267 (1991)
 
 
 [5]
 Judge Blake would appear to have no federal grounds for appeal to the United States Supreme Court. His only federal claim is for violation of procedural due process, a claim which is dependent on finding a liberty or property interest under state law. Here the Pennsylvania Supreme Court has authoritatively determined that Judge Blake has no such interest under state law. And certainly federal courts have no jurisdiction to review state officials' compliance with state law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984)