Philip VALENTI, Betty Clift, Dorothy Ferebee, Eric Bradway, Stuart W. Kessler, Arline Lotman, Patricia W. Lord, Howard William Glassman, Sean Lannon, Martin Zehr, and Francis Worley, Plaintiffs,

v.

Brenda K. MITCHELL, Secretary of the Commonwealth of Pennsylvania, William Boehm, Commissioner, Bureau of Commissions, Elections, and Legislation, and Arlen Specter, United States Senator from Pennsylvania, Defendants.

Civ. A. No. 92–1680.

United States District Court,
E.D. Pennsylvania.

April 8, 1992.

Samuel C. Stretton, West Chester, Pa., for plaintiffs.

Gregory E. Dunlap, Deputy General Counsel, Com. of Pa., Gwendolyn T. Mosley, Sr. Deputy Atty. Gen., Office of the Atty. Gen., Harrisburg, Pa., for defendants Mitchell and Boehm.

Mark A. Klugheit, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant Senator Specter.

## MEMORANDUM

GAWTHROP, District Judge.

In my Opinion and Order of April 3, 1992, I raised and addressed, *sua sponte*, a jurisdictional issue that was neither argued nor pursued by the parties. The Third Circuit Court of Appeals, however, yesterday ordered that the issue be briefed by today, for argument tomorrow, thus signaling its concerns on that question. I, too, am constantly mindful of my finite jurisdictional ambit, and I deem it appropriate to revisit the issue in my own right, reassessing and perhaps expatiating upon its treatment in footnote five of my opinion filed five days ago.

As a court of limited jurisdiction, I may, of course, only entertain cases that are properly before a federal court. If a court believes at any time that there could be a defect in its subject matter jurisdiction, the issue must be examined and resolved, whether raised by the parties or the court. Fed.R.Civ.P. 12(h)(3); *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804). Hence, this memorandum.

## FACTUAL BACKGROUND

The facts leading up to the Pennsylvania Supreme Court's March 10, 1992, are outlined in that Court's opinion of March 26, 1992; I will review them briefly in order to assess whether that order was adjudicative or non-adjudicative under *Blake v. Papadakos*, 953 F.2d 68 (3d Cir.1992). Because the General Assembly of the Commonwealth had yet failed, by the end of 1991, to enact a congressional redistricting bill, several Pennsylvania state legislators brought suit in the Commonwealth Court on January 28, 1992: *Mellow v. Mitchell*, — Pa. —, 607 A.2d 204 (1992). Senior Judge Francis Barry enjoined the operation of all laws relating to the election of candidates for the U.S. House of Representatives and of delegates and alternate delegates to the national conventions of the two political parties. He also ordered that any person wishing to submit a congressional redistricting plan for consideration by the court do so no later than February 11, 1992. His order provided notice that, if the Legislature failed to act by February 11, 1992, the Commonwealth Court would select a plan in the Legislature's stead.

The Legislature passed no plan, and on February 13, 1992, the Pennsylvania Supreme Court exercised plenary jurisdiction, designating President Judge David W. Craig of the Commonwealth Court as Master to conduct hearings and prepare a report and recommendation of an apportionment plan. Judge Craig filed a report and recommendation on a congressional redistricting plan and an election calendar with the Supreme Court on February 24, 1992. Exceptions were filed to the plan, and the Supreme Court heard oral argument on March 7, 1992. On March 10, 1992, the Supreme Court issued a Per Curiam Order, the order at issue in this case, adopting Judge Craig's Findings, Recommended Decisions, and Form of Order, along with a "Revised Election Calendar." The Court issued an Opinion on March 26, 1992, in which it explained why it chose Judge Craig's redistricting plan over all exceptions. The Court's opinion was silent as to any explanation of the Court's revision of the election calendar, shortening the period allowed for gathering signatures. In fact, the election schedule was not discussed at all, as an issue of concern to anyone. It was presented as something of an administrative aside.

## DISCUSSION

■ In our system of federalism, a United States District Court does not ordinarily have jurisdiction to review the acts of the highest court of a state. This limitation on federal jurisdiction is known as the *Rooker–Feldman* doctrine.[1] Under 28 U.S.C.

---

1. This doctrine comes from two cases, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and was recently refined by the Third

§ 1257 [2], a disappointed litigant's sole recourse is appeal to the Supreme Court of the United States on writ of certiorari. To preserve state-federal comity and to prevent the proliferation of collateral attacks on state adjudications, the state supreme court's findings of fact and applications of law to the rights of specific individuals are beyond the reach of the federal district court.

Judicial interpretation of 28 U.S.C. § 1257 has, however, consistently reserved the possibility of district court review of a circumscribed class of state supreme court acts—namely, when the court steps out of its strictly adjudicative role and acts in a non-judicial capacity, as an administrator or legislator. Such situations are admittedly rare. Nevertheless, the United States Supreme Court has recognized, for example, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 485–86, 103 S.Ct. 1303, 1316–17, 75 L.Ed.2d 206 (1983) that promulgation of state bar rules was a non-adjudicative act, and that a general challenge to those rules could be subject to federal district court review.

▮ I note at the outset, that it is questionable whether *Rooker–Feldman* applies to the case at bar at all. Although the defendants in the state action are the same as the ones at bar, the plaintiffs, here, were not parties to the challenged state court litigation, and the plaintiffs in the state action—state senators—are not parties to the case before this court. Since the parties here were not the same parties who received an adverse ruling from the Pennsylvania Supreme Court, the matter before this court is technically not an appeal from a state court judgment, and thus, review of its constitutionality is not barred by the *Rooker–Feldman* doctrine. *See Richard W. Hochman v. New Jersey Supreme Court*, 1990 WL 126198, *3, 1990 U.S.Dist. LEXIS 11328, *8 (D.N.J.1990).

▮ However, assuming, *arguendo*, that this case could be construed as appeal from a final decision of the state supreme court, the nature of the state supreme court's act becomes determinative. The dichotomy between adjudicative and non-adjudicative acts is not always clear and has been described in various ways. Adjudicative acts are the paradigm of what a court does: apply existing law to specific facts and parties. Non-adjudicative acts are quasi-legislative: promulgating general rules applicable to as-yet-unidentified parties. Adjudicatory acts are specific, often retrospective, and they deal with particular individuals and the delimitation of their rights under existing law. Non-adjudicative acts are general, usually prospective, and delimit the rights of unspecified individuals. The Third Circuit recently described the difference, as follows: "[A]djudicative acts involve the application of existing laws to the facts in a particular case," whereas, "administrative/non-adjudicative acts, generally require not the application of existing laws to particular acts but rather 'look[ing] into the future and chang[ing] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.'" *Blake, supra,* 953 F.2d at 72. In making the distinction between adjudicative and non-adjudicative, "[t]he form of the proceeding is not significant. It is the nature and effect which is controlling." *In re Summers*, 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1945); *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226–227, 29 S.Ct. 67, 69–70, 53 L.Ed. 150 (1908); *Blake, supra,* 953 F.2d at 73 (citations omitted).

In *Blake*, the Third Circuit confirmed again that, under the *Rooker–Feldman* doctrine, the lower federal courts do have jurisdiction to review non-adjudicative acts of the state supreme court. At issue in *Blake* were two orders of the Pennsylvania Supreme Court. The Third Circuit deemed

Circuit in *Blake v. Papadakos*, 953 F.2d 68, 72 (3d Cir.1992).

**2.** 28 U.S.C. § 1257 reads in pertinent part: "Final judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari ... where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

the first, issued on December 19, 1990, to be a non-adjudicative act, under the supreme court's supervisory powers, susceptible to review in the United States District Court. However, it deemed the second, the state supreme court's ruling on the constitutionality of the first order, an adjudicative act, outside the jurisdiction of the United States District Court.

In that case, President Judge Edward J. Blake of the Court of Common Pleas of Philadelphia County, brought suit, alleging that the Pennsylvania Supreme Court, in its December 19, 1990 order had usurped powers that traditionally had been exercised by the president judge. In that order, the state supreme court had acted in its supervisory capacity, defined under the state constitution and by state statute, to exercise greater administrative control over the state's courts, including the court over which Judge Blake presided. Judge Blake challenged, through the state system, the Pennsylvania Supreme Court's order, alleging that the order deprived him of his rights without due process of law. The Pennsylvania Supreme Court upheld its own order, concluding that Judge Blake, "had been deprived of no right or interest" that might trigger a Due Process violation. *In re Petition of Hon. Edward J. Blake, et al.*, 527 Pa. 456, n. 2, 593 A.2d 1267 (1991). *Blake, supra*, 953 F.2d at 71.

After receiving the final judgment of the state supreme court, Judge Blake sought a federal injunction against the Pennsylvania Supreme Court to settle this dispute between the two levels of the state judiciary. The federal district court issued a preliminary injunction, finding, contrary to the state supreme court's ruling, that Judge Blake had indeed been deprived of a constitutionally protected property or liberty interest. *Blake, supra*, 953 F.2d at 71. On review, the Third Circuit concluded that the Pennsylvania Supreme Court had already entered a final decision in its 1991 adjudication of Judge Blake's constitutional claims, and that, therefore, he was barred, by *Rooker–Feldman,* from seeking relief in the United States District Court. As an epilogue, the Third Circuit noted, however, that, but for Judge Blake's prosecution of his claims to final decision in the state system, the federal district court would have had jurisdiction to review the state supreme court's administrative order of December 19, 1990, which was the basis of Judge Blake's suit. In short, if Judge Blake had not instituted his action in the state court system, but had instead brought suit directly in the United States District Court, "the *Rooker–Feldman* doctrine could not have precluded federal jurisdiction." *Blake, supra*, 953 F.2d at 73.

 Here, there are several plaintiffs who sought and received final judgment in the Pennsylvania Supreme Court on the constitutionality of the Pennsylvania Supreme Court's March 10, 1992, Order as applied to their candidacies. They, like Judge Blake, are barred from seeking review in the federal district court, and have, thus, been dismissed from this suit. Their sole remedy is in the United States Supreme Court, under 28 U.S.C. § 1257. However, those plaintiffs who did not pursue their claims to the point of adverse adjudication in the Pennsylvania Supreme Court, but rather came directly to the United States District Court, are, on the contrary, in the position that, the Third Circuit explained, Judge Blake would have enjoyed had he not taken his case through final judgment in the state system: their cases are not barred by the *Rooker–Feldman* doctrine.

In its Order of March 10, 1992, the Supreme Court of Pennsylvania promulgated the boundaries of electoral districts along with the election schedule. It was the legislature's responsibility to set these boundaries and establish the election schedule. U.S. Constitution, Article I, § 4; Pennsylvania Constitution, Article VII, § 2, § 4, § 9 (1969); Act of June 3, 1937, P.L. 1333, art. VI, § 601, § 603, 25 P.S. § 2751, § 2753. In fact, several weeks before its intervention, the Pennsylvania Commonwealth Court, speaking through the Supreme Court's designated Master, President Judge Craig, had warned that if the Legislature failed to promulgate a new electoral map and schedule, the court itself would do it for them. Thus, the Pennsylvania Supreme Court entered the legislature's sphere. In so doing, it played the legisla-

ture's role; its action and order are quasi-statutory. The Order is drafted in a most open-ended, general way, the hallmark of the legislative, as opposed to the judicial, function. The general, as opposed to specific, nature of the Pennsylvania Supreme Court decision is further evidenced by the impact it had beyond the particular parties to that action; the new congressional district boundaries and revised election schedule affected the interests of, for example, would-be candidates, county election officials, and voters.

If anything, the March 10, 1992, Order challenged here, is more clearly outside the judicial realm than the December 19, 1990, Order of the Pennsylvania Supreme Court. In *Blake,* the Pennsylvania Supreme Court was exercising supervisory and administrative powers within its constitutional and statutory mandate, whereas in the case at bar, the court was, by its own characterization of the delegation to the Master, acting as a surrogate legislature.

I note as well that under the United States Constitution, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." United States Constitution, Article I, § 4. To the extent that the Pennsylvania Supreme Court was setting the schedule for the elections of senators and representatives, the court was acting in a role assigned and entrusted by the Constitution to the legislature, and thus, *a fortiori* these acts should be reviewable as being non-adjudicative.

Even if that portion of the Supreme Court Order and Opinion that adopted Judge Craig's recommended reapportionment plan—discussing the reasons why the plan was a fair, equitable, and most appropriate means of reapportionment, under the circumstances and existing law—could be construed as adjudicative, not one plaintiff in this case before me has challenged the aspect of the March 10, 1992, Order pertaining to the drawing of the new districts. That issue is pending before a panel of three federal judges on a constitutional challenge to the reapportionment plan, under 28 U.S.C. §§ 2284 and 1344. The promulgation of the Revised Election Calendar, including the timing notice in the Pennsylvania Bulletin and legal publication in newspapers, two days before the deadline, the only Supreme Court acts challenged in the case at bar, have the characteristics of non-adjudicative act. In setting the schedule, the Court did not apply existing law to particular facts, but rather promulgated deadlines or rules applicable, potentially, to everyone in the Commonwealth. Since the Election Calendar, the only portion of the March 10, 1992, Order at issue, is non-adjudicative, the federal district court has jurisdiction to hear this challenge to its constitutionality.

Accordingly, I continue to be convinced that the *Rooker–Feldman* doctrine does not serve to divest this court of its jurisdiction to decide whether the March 10, 1992, Order of the Pennsylvania Supreme Court, impermissibly conflicted with the United States Constitution, which is, of course, the supreme law of the land.