**Hon. Angelo A. GUARINO, Senior Judge of the Philadelphia Court of Common Pleas, Plaintiff,**

v.

**Hon. Rolf LARSEN, Justice of the Supreme Court of Pennsylvania, et al., Defendants.**

Civ. A. No. 93–0734.

United States District Court, E.D. Pennsylvania.

April 28, 1993.

Harry Lore, Sacks, Basch, Weston & Sacks, Philadelphia, PA, for plaintiff.

Charles C. Hileman, Arlin M. Adams, Schnader Harrison Segal & Lewis, Philadelphia, PA, for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Before the Court is defendants' motion to suspend, pending appeal, the injunction ordered by this Court in its Order of April 16, 1993. For the reasons set forth below, this Court will deny defendants' motion.

The facts of this case are set forth in detail in this Court's Memorandum of April 16, 1993, and will not be repeated herein, except as are pertinent to defendants' present motion.

In this Court's Memorandum and Order of April 16, 1993, this Court declared that the constitutional rights of plaintiff Judge Guarino had been violated by the Order issued by defendant Mr. Justice Rolf Larsen on November 10, 1992 (hereinafter "Order of November 10th"), which Order was handed to Judge Guarino in the midst of a major felony trial and which ordered him to leave the bench without prior notice of any charges against him and without opportunity to respond to any such charges. In his Order of November 10th, Mr. Justice Larsen revoked Judge Guarino's assignment for the period of

November 1 through November 30, 1992, as a senior judge of the Court of Common Pleas of the First Judicial District of Pennsylvania, and further ordered that Judge Guarino was not authorized to complete unfinished business that was pending before him.

In this Court's Order of April 16, 1993, this Court enjoined defendants to reinstate Judge Guarino to the status of senior judge which he had enjoyed pursuant to his assignment for the term of November 1 through November 30, 1992, and of which he was deprived in violation of his constitutional rights by Mr. Justice Larsen's Order of November 10th. This Court also enjoined defendants that they were not to deny approval of subsequent assignments of Judge Guarino as a senior judge of the Court of Common Pleas of the First Judicial District of Pennsylvania on the basis of allegations that Judge Guarino had violated the constitutional rights of venirepersons during the process of selecting a jury, unless and until such allegations against Judge Guarino were referred to the Judicial Inquiry and Review Board ("JIRB") pursuant to Article V, Section 18 of the Pennsylvania Constitution, and the recommendation of the JIRB had been received and evaluated de novo by the Pennsylvania Supreme Court. This Court also ordered that defendants must pay all reasonable attorney's fees of Judge Guarino in this action.

Defendants have filed their motion to suspend, pending appeal, the injunction issued by this Court in its Order of April 16, 1993, pursuant to Fed.R.Civ.P. 62(c). Rule 62(c) states:

> (c) Injunction Pending Appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

> \*    \*    \*    \*    \*    \*

■ As stated by the United States Supreme Court in *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987), the factors regulating a stay are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

The Supreme Court further stated that the traditional stay factors "contemplate individualized judgments in each case." *Id.* at 777, 107 S.Ct. at 2119.

■ After careful consideration of each of the factors delineated in *Hilton,* this Court determines that the defendants have not carried their burden of showing that a stay is warranted. This Court will therefore deny defendants' motion.

### FACTOR ONE: DEFENDANTS' LIKELIHOOD OF SUCCESS ON THE MERITS

#### a. The *Rooker–Feldman* Doctrine

■ In support of defendants' assertion that, on appeal, they are likely to succeed on the merits, defendants claim that jurisdiction over this matter by this Court is barred by the *Rooker–Feldman* doctrine. This Court, in its Memorandum of April 16, 1993, at 21–27, discussed in detail the application of the *Rooker–Feldman* doctrine to this case, and determined that Mr. Justice Larsen's Order of November 10th removing Judge Guarino from the bench was an administrative, nonadjudicative act. As the Third Circuit stated in *Blake v. Papadakos,* 953 F.2d 68, 71 (3rd Cir.1992), the *Rooker–Feldman* doctrine does not bar a federal district court from reviewing an administrative decision of a state's highest court to determine constitutional issues. Jurisdiction, therefore, is not barred in this case.

In support of their assertion, defendants cite *Blake.* Defendants, however, ignore the distinction drawn by the Third Circuit in *Blake,* 953 F.2d at 72, between administrative and adjudicatory acts. Further, defendants ignore Judge Garth's concluding statement in *Blake:*

Had Judge Blake not instituted his action challenging the December 19, 1990 order in the Pennsylvania Supreme Court but instead had he filed his action directly in the United States District Court, the *Rooker–Feldman* doctrine could not have precluded federal jurisdiction, *as no adjudication by the Pennsylvania courts would then have preceded · the · federal action. But by challenging the Pennsylvania Supreme Court's action before that very court, Judge Blake elected his remedy.*

*Blake,* 953 F.2d at 73 (emphasis added).

In contrast to the facts of *Blake,* and of the cases reviewed by the Third Circuit in *Blake* which found that a state action had been an adjudication, Judge Guarino never filed a petition or any other motion with the Pennsylvania Supreme Court, or with any other Pennsylvania state court. Further, Mr. Justice Larsen, in his Order of November 10th removing Judge Guarino from the bench, was not ruling on a petition, motion or case that was before him. In his Order of November 10th, as quoted *in toto* in this Court's Memorandum of April 16, 1993, at 5–6, Mr. Justice Larsen gave no reasons for his action, stating only that Judge Guarino's assignment was revoked and that Judge Guarino was not authorized to complete unfinished business pending before him. It was not until four months later—and one month after Judge Guarino had filed his action in this Court— that the Pennsylvania Supreme Court issued its per curium order of March 10, 1993, as quoted *in toto* in this Court's Memorandum of April 16, 1993, at 18–21, in which the Pennsylvania Supreme Court stated that the basis of Mr. Justice Larsen's Order of November 10th had been "cognizance" of the allegations in *Jeffrey C. Levy, et al. v. Guarino,* Civil Action No. 92–1609. The *Levy* action, in which no findings of fact had been made, had been proceeding in federal district court.

Mr. Justice Larsen's Order of November 10th was not an adjudicative ruling. It was an administrative, non-adjudicative act, review of which by this Court is not barred by the *Rooker–Feldman* doctrine.

### b. *Younger* Abstention

█ In support of their belief that, on appeal, defendants are likely to succeed on the merits, defendants also claim that this Court should have abstained in this matter on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

As stated by the United States Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), *Younger* and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. In *Middlesex, id.,* the Supreme Court further stated, however, that the *Younger* abstention doctrine is applicable only when there is an adjudicative proceeding wherein a plaintiff has the opportunity to raise his or her constitutional claims.

As this Court discussed in its Memorandum of April 16, 1993, at 21–27, and in Section Ia, above, Mr. Justice Larsen's act in issuing his Order of November 10th removing Judge Guarino from the bench was not an adjudicative proceeding. It was, instead, an administrative, non-adjudicative act. Mr. Justice Larsen issued his Order of November 10th without notice to Judge Guarino and without an opportunity for him to respond.

The Supreme Court of the United States pointed out in *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521, that minimal respect for state processes precludes any presumption that the state courts will not safe-guard federal constitutional rights. This Court did not engage in any such presumption. When Judge Guarino filed suit in this Court, he had already been deprived of his federal constitutional property right by Mr. Justice Larsen's Order of November 10th, which removed Judge Guarino from the bench without notice and an opportunity to respond. Further, when Judge Guarino filed suit in this Court, he had already been deprived of his liberty interest, in that he had been deprived of a property right in a manner that defamed him, in violation of his federal constitutional rights.

As stated in the concurrence of Mr. Justice Marshall in *Middlesex,* 457 U.S. at 438, 102 S.Ct. at 2524, in which Mr. Justices Brennan, Blackmun and Stevens joined,

[A]bsent an ongoing judicial proceeding in which there is an adequate opportunity for a party to raise federal constitutional challenges, *Younger* is inapplicable.

Judge Guarino was removed from the bench by administrative act, without notice and an opportunity to respond. He was given no opportunity to raise his constitutional challenges in an ongoing proceeding that was judicial in nature. The *Younger* abstention doctrine is, in the words of Mr. Justice Marshall, "inapplicable" to this case.

### c. Judge Guarino's Property Right

■ Defendants assert that as a retired judge, Judge Guarino has no entitlement to future assignments as a senior judge. They assert, therefore, that on appeal, they will likely succeed on the merits of their claim that they should not be enjoined to return Judge Guarino to the bench, since he has no property right to any term as a senior judge that occurs after November 30, 1992.

Defendants appear to ignore the fact that, in its per curium order of March 10, 1993, which was issued four months after Judge Guarino was removed from the bench pursuant to Mr. Justice Larsen's Order of November 10th, and which is quoted *in toto* in this Court's Memorandum of April 16, 1993, at 18–21, the Pennsylvania Supreme Court made the following statement:

The Court must emphasize that this order, making the Rule [to Show Cause] absolute and affirming the November 10, 1992, order, is without prejudice to the eligibility of Judge Guarino for assignment to temporary service as a Senior Judge in the future and is in no way to be interpreted as a reflection on Judge Guarino's long record of service as a Judge of the Philadelphia Court of Common Pleas or as a sanction or form of punishment against Judge Guarino.

The Pennsylvania Supreme Court, having determined that Judge Guarino is eligible for assignment as a senior judge, has no basis for not assigning Judge Guarino, whether it

acts pursuant to this Court's injunction or pursuant to its own established criteria for appointing former or retired judges to senior status. As stated in this Court's Memorandum of April 16, 1993, at 2–3, Judge Guarino served as an elected judge for seventeen years before reaching mandatory retirement age under the Pennsylvania Constitution. He then filed a certification of availability with the Pennsylvania Supreme Court, which was approved by the Pennsylvania Supreme Court. Thereafter, Judge Guarino was assigned for monthly terms until he was removed from the bench at the beginning of his November, 1992, term pursuant to Mr. Justice Larsen's Order of November 10th. Judge Guarino has not revoked his certification of availability and, as stated by the Pennsylvania Supreme Court in its per curium order, as quoted above, he remains eligible for assignment. As stated in this Court's Memorandum of April 16, 1993, at 10, it was the testimony of the Court Administrator of the Commonwealth of Pennsylvania, defendant Nancy M. Sobolevitch, at the Rule 65(a)(2) hearing held before this Court on March 3, 1993, that since the enactment of the mandatory retirement provision in 1968, no retired judge who had applied for senior status had ever been denied senior status. As further stated in this Court's Memorandum of April 16, 1993, at 11, Judge Bonavita-cola, the administrative judge of the Philadelphia Court of Common Pleas testified at the Rule 65(a)(2) hearing that there continues to be a "sizeable inventory" of criminal cases in the Philadelphia Court of Common Pleas. As also stated in this Court's Memorandum of April 16, 1993, at 10, and as shown on the assignment sheets submitted in evidence at the Rule 65(a)(2) hearing before this Court, Judge Blake, as President Judge of the Philadelphia Court of Common Pleas, has continued each month to request Judge Guarino's services as a senior judge. Thus, based on the Pennsylvania Constitution, Article V, Section 16 together with the criteria for the assignment of judges established by the Pennsylvania Supreme Court in Rule 701 of the Pennsylvania Rules of Judicial Administration, defendants have no basis for failing to assign Judge Guarino, in that (1) Judge Guarino is and remains eligible for assign-

ment; (2) for 25 years, since 1968, no retired judge who applied for senior status had ever been denied senior status; (3) there remains a pressing need for Judge Guarino's services in the Philadelphia Court of Common Pleas based on its "sizeable inventory" of criminal cases to be tried, and (4) the services of Judge Guarino continue to be requested.

In Article V, Section 16(c), the Pennsylvania Constitution states:

A former or retired justice or judge may, with his consent, be assigned by the Supreme Court on temporary judicial service as may be prescribed by rule of the Supreme Court.

This section of the Pennsylvania Constitution makes it clear that former and retired justices and judges *may, with their consent,* be assigned by the Pennsylvania Supreme Court to temporary judicial service, that is, senior status, as prescribed by rule of the Pennsylvania Supreme Court. Having determined that Judge Guarino meets the eligibility criteria for assignment as a senior judge as prescribed by Rule 701, the Pennsylvania Supreme Court may not arbitrarily deny him further assignment. Nevertheless, in the five months between Mr. Justice Larsen's Order of November 10th and this Court's Memorandum and Order of April 16, 1993, defendants have failed to assign Judge Guarino to senior status. In the month following its per curium Order of March 10th, despite its statement that the order was "without prejudice to the eligibility of Judge Guarino for assignment to temporary service as a Senior Judge," defendants have yet to assign him to senior status.

In the Order of April 16, 1993, this Court found that Judge Guarino had a property right in his assignment as senior judge for the term of November 1 through November 30, 1992, which term continued in effect after its stated expiration date for such time as was required to complete the matters pending before him on his case list. This Court further found that Article V, Section 18 of the Pennsylvania Constitution bestows a property right on Judge Guarino, as it does on all active and senior justices and judges, pursuant to which they may not be suspended, removed, disciplined or compulsorily re-

tired without a due process hearing. This Court also determined that Judge Guarino is eminently qualified to sit as a senior judge, in that he has met, and continues to meet, the criteria established by the Pennsylvania Constitution and the Pennsylvania Supreme Court for assignment as a senior judge. This Court found, however, that although the Pennsylvania Supreme Court has itself pronounced Judge Guarino "eligible" for assignment, defendants continue to fail to reassign him as a senior judge. This Court, therefore, enjoined the Pennsylvania Supreme Court to reinstate Judge Guarino to the status he enjoyed pursuant to his assignment for the term of November 1 through November 30, 1992, and of which he was deprived in violation of his constitutional rights on November 10, 1992. This Court further enjoined defendants that they were not to deny approval of subsequent assignments of Judge Guarino as a senior judge of the Court of Common Pleas of the First Judicial District of Pennsylvania on the basis of allegations that Judge Guarino had violated the constitutional rights of venirepersons unless and until such allegations were referred to the JIRB pursuant to Article V, Section 18 of the Pennsylvania Constitution, and the recommendation of the JIRB had been received and evaluated de novo by the Pennsylvania Supreme Court.

This Court having found that defendants have denied Judge Guarino his constitutional property right in his assignment as a senior judge, and that defendants have failed to assign Judge Guarino to senior status despite the Pennsylvania Supreme Court's pronouncement that he is and remains "eligible," this Court found that defendants must be enjoined to return Judge Guarino to the bench.

### d. Defendant's Remaining Assertions

In support of defendants' assertion that there is a likelihood that they will succeed on the merits of their appeal of this Court's Order, defendants make several further claims of error, some of which require no comment, and none of which require substantial comment.

Defendants contend that they did not defame Judge Guarino in the course of altering his status as a senior judge. This contention has been addressed in this Court's Memorandum of April 16, 1993, at 45–49.

Defendants contend that they did afford Judge Guarino an adequate opportunity to clear his name. This contention has been addressed in this Court's Memorandum of April 16, 1993, at 46–49.

Defendants object to this Court's referring to the Order of November 10th as Mr. Justice Larsen's order. Defendants state that defendant Ms. Sobolevitch testified before this Court at the Rule 65(a)(2) hearing that Mr. Justice Larsen had consulted with the other justices. However, Ms. Sobolevitch also testified that it is Mr. Justice Larsen who administers the assignment of senior judges, and that it was Mr. Justice Larsen who signed and entered his Order of November 10th removing Judge Guarino from the bench. It was, thus, Mr. Justice Larsen's Order.

### e. This Court's Conclusion as to Defendants' Likelihood of Success on the Merits

Having carefully considered each of defendants' assertions, this Court concludes that defendants have failed to carry their burden of making a strong showing that they are likely to succeed on appeal on the merits of this action.

## FACTOR TWO: WHETHER DEFENDANTS WILL SUFFER IRREPARABLE HARM IF A STAY IS DENIED

This Court's injunction requires the Pennsylvania Supreme Court to assign Judge Guarino to the status of senior judge which he enjoyed pursuant to his assignment for the term of November 1 through November 30, 1992. As quoted *in toto* in this Court's Memorandum of April 16, 1993, at 18–21, the Pennsylvania Supreme Court in its per curium order of March 10, 1993, stated:

> The Court must emphasize that this order, ... is without prejudice to the eligibility of Judge Guarino for assignment to temporary service as a Senior Judge in the future and is in no way to be interpreted as a

reflection on Judge Guarino's long record of service as a Judge of the Philadelphia Court of Common Pleas or as a sanction or form of punishment against Judge Guarino.

Further, as discussed in Section Ic, above, defendant Ms. Sobolevitch testified at the Rule 65(a)(2) hearing before this Court that no retired judge who had applied for assignment as a senior judge had ever been turned down; while Judge Bonavitacola testified that there remains a "sizeable inventory" of criminal cases to be tried in the Philadelphia Court of Common Pleas and thus, a continuing need for the assignment of Judge Guarino.

This Court fails to see, therefore, how the Pennsylvania Supreme Court will be irreparably injured by the restoration to the bench of an eminently qualified judge who has been completing an average of 100 criminal jury trials per year, and who, as that court itself stated, has had a "long record of service as a Judge of the Philadelphia Court of Common Pleas." Defendants have failed to carry their burden of establishing how their assignment of Judge Guarino will irreparably injure them.

## FACTOR THREE: WHETHER JUDGE GUARINO WILL SUFFER SUBSTANTIAL HARM IF THE STAY IS GRANTED

Defendants assert that if a stay is granted, the only harms to be suffered by Judge Guarino would be a temporary delay in his return to the bench together with a deprivation of $250 per diem for thirteen days per month. Defendants overlook the fact that Judge Guarino has been a sitting judge since his election in 1974. During his seventeen years as an active judge and his almost two years as a senior judge, Judge Guarino has concluded an average of 100 criminal jury trials per year, most of which were major felony trials. This impressive record was unaffected by his change in status from active to senior judge, or by the fact that his salary was cut to a per diem rate paid for an average of only thirteen days per month. It is obvious that, for Judge Guarino, serving as a sitting judge is more than a job and a

paycheck: it is his life's work. Further, defendants overlook the fact that Judge Guarino is seventy-two years old. Each additional day of "temporary delay" before restoring Judge Guarino to the bench is another day lost to him, in which he is precluded from his life's work, and which must be added to the irreparable injury he has already suffered in having been removed from the bench in violation of his constitutional rights and in having been forced to remain off the bench now for five months. This is "substantial harm."

### FACTOR FOUR: WHERE THE PUBLIC INTEREST LIES

Defendants claim that the public interest in this matter lies with the Pennsylvania Supreme Court. Frankly, it appears to this Court that the public interest in this matter lies with the citizens of Pennsylvania. As stated in this Court's Memorandum of April 16, 1993, at 42–43, the citizens of Pennsylvania are entitled to a strong, independent judiciary composed of judges who have the fortitude to express legal opinions in which they truly believe.

Furthermore, as discussed in Section Ic, above, Judge Guarino remains eminently qualified to sit as a senior judge pursuant to the Pennsylvania Constitution, Article V, Section 16 and the criteria for the assignment of judges established by the Pennsylvania Supreme Court in Rule 701 of the Pennsylvania Rules of Judicial Administration. As quoted *in toto* in this Court's Memorandum of April 16, 1993, at 18–21, the Pennsylvania Supreme Court in its per curium order of March 10, 1993, stated:

> The Court must emphasize that this order, . . . is without prejudice to the eligibility of Judge Guarino for assignment to temporary service as a Senior Judge in the future. . . .

Under the facts of this case, the citizens of Pennsylvania will be served by returning to the bench a judge who has handled an average of 100 criminal jury trials per year, in a court which has a "substantial inventory" of cases to be tried. The public interest lies with them.

### CONCLUSION

After considering each of the factors which this Court has been directed to consider pursuant to *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987), in making the determination as to whether a stay should be granted pending appeal, this Court finds that the defendants have failed to carry their burden as to each factor. The Court, therefore, will deny defendant's motion to suspend, pending appeal, the injunction ordered by this Court in its Order of April 16, 1993.