

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2005

# Carroll v. Rochford

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4871

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Carroll v. Rochford" (2005). *2005 Decisions.* Paper 1570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4871
_____

WILLIAM CARROLL AND ANNE MARIE CARROLL

v.

EDWARD V. ROCHFORD, individually and
in his official capacity as Morris
County Sheriff; MORRIS COUNTY SHERIFF'S
DEPARTMENT; JOHN B. DANGLER, in his
official capacity as Morris County
Prosecutor; JACK DEMPSEY, individually
and in his capacity as Morris County
Undersheriff; MICHAEL LOWE, individually
and in his capacity as Internal Affairs
Officer of the Morris County Sheriff's
Office; RICHARD ROSE, individually and
in his capacity as Detective of the
Morris County Prosecutor's Office;
ANTHONY CALAMITO, individually and in
his capacity as Detective of the Morris
County Prosecutor's Office; MORRIS COUNTY
PROSECUTOR'S OFFICE; COUNTY OF MORRIS;
JOHN DOES 1-6, fictitious names for
individuals as yet unknown

Edward V. Rochford and Jack Dempsey,

Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
_____

(D.C. Civ. No. 99-cv-05669)
District Judge: The Honorable William H. Walls

Argued November 1, 2004

Before: ALITO, FUENTES, and BECKER, Circuit Judges

(Filed: January 7, 2005)

STEPHEN E. TRIMBOLI, Esq. (Argued)
FREDRIC M. KNAPP, Esq.
Laufer, Knapp, Torzewski & Dalena
23 Cattano Avenue
Morristown, New Jersey   07960

*Counsel for Appellants*

DENNIS A. DURKIN, Esq.
Durkin & Durkin
1120 Bloomfield Avenue
Suite 204
P.O. Box 1289
West Caldwell, New Jersey   07007

*Counsel for Appellees*

———————————

OPINION
———————————

PER CURIAM:

Before considering the merits of this appeal, we must determine if we have

appellate jurisdiction to decide whether the District Court erred in denying the

defendant's qualified immunity summary judgment argument. We possess jurisdiction to

hear an interlocutory appeal from the denial of a qualified immunity summary judgment

2

argument where the issue is one of law, but we do not have jurisdiction to hear such an interlocutory appeal where the issue concerns the district court's identification of the facts that are not genuinely disputed. See Forbes v. Township of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002) ("[W]e may 'review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right,' but we may not 'consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove.") (quoting Ziccardi v. City of Philadelphia, 288 F.3d 57, 61 (3d Cir. 2002)).

Here, one of the plaintiff's claims is that he was terminated based on political affiliation. In order to succeed on this claim, he had to show that political affiliation was a substantial motivating factor in the decision to terminate. See Goodman v. Pennsylvania Turnpike Com'n, 293 F.3d 655, 663-664 (3d Cir. 2002). If he made such a showing, the defendants could defend on the ground that he would have been terminated even if they had not taken his political affiliation into account. See id. at 664. The District Court in this case concluded that there was sufficient evidence to show that the plaintiff's political affiliation was a substantial motivating factor in the defendants' decision to terminate. See A12. The District Court also concluded that there was sufficient evidence to show that the plaintiff would not have been terminated were it not for his political affiliation. Id. Both of these conclusions are contested, but, as noted, we cannot at this juncture review the correctness of the facts identified by the district court as

3

subject to genuine dispute. Accordingly, we lack jurisdiction at this point to entertain this argument.

We reach the same conclusion with respect to the claim that the defendants retaliated against the plaintiff by violating his right to counsel under New Jersey law during his internal affairs interview on December 15, 1997. The Supreme Court has held that "the First Amendment . . . protects [a] state employee [ ] not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights.'" Rutan v. Republican Party, 497 U.S. 62, 76 n.8 (1990). Thus, it appears that, if the defendants handled the plaintiff's interview in an appreciably different manner due to his political affiliation, this would be a First Amendment violation. That the manner of interrogation did not in itself violate the Constitution would not matter. Nor would it be necessary for the plaintiff to show that a reasonable defendant should have known that the manner of conducting the interrogation violated New Jersey law.

Unfortunately, the opinion of the District Court does not expressly address the question whether the plaintiff's political affiliation was a substantial motivating factor in the decision to conduct the interrogation in the manner that was used. Nor does the opinion of the District Court directly address whether the interrogation would have been conducted in the same manner even if the plaintiff had not been politically at odds with the incumbent administration. Nevertheless, we are persuaded that the District Court, in

4

response to our prior remand, reached the conclusion that there were genuine disputes of fact regarding both of these issues. The manner in which the plaintiff was interrogated was closely related to the ultimate decision to terminate, and the District Court's discussion of the related questions in relation to the decision to terminate (i.e., whether political affiliation was a motivating factor and but-for cause in the termination decision) convinces us that the Court meant to treat the termination and interrogation claims similarly.

We therefore hold that we lack appellate jurisdiction to consider the merits of this appeal. We emphasize that we have not reached and express no view regarding the question whether the defendant's summary judgment motion was properly denied. Review of that question will have to await the entry of a final judgment in this case.

Despite our lack of appellate jurisdiction to consider the merits, however, we may address issues of subject matter jurisdiction at any time and we do so now in order to spare the District Court and the parties unnecessary effort and doubt. See Louisville & N.R. Co. v. Mottley, 211 U.S. 149, 152 (1908) (lack of subject matter jurisdiction can be raised at any time in a proceeding).

Under the Rooker-Feldman doctrine, District Courts generally may not sit in direct review of state court judgments. Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dep't, 973 F.2d 169, 177 (3d Cir. 1992) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and

5

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)).  More specifically, lower federal courts cannot entertain claims that have been previously adjudicated or that are "inextricably intertwined" with a prior state adjudication.  FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996); Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992).  A federal claim is "inextricably intertwined" with a prior state adjudication if that federal claim "succeeds only to the extent that the state court wrongly decided the issues before it."  FOCUS, 75 F.3d at 840.  In other words, Rooker-Feldman prohibits a federal action only "if the relief requested in the federal action would effectively reverse the state decision or void its ruling."  Id. (emphasis added).

Carroll's prior litigation is a state court ruling because of the Appellate Division's affirmance of the Merit System Board and because of the New Jersey Supreme Court's decision denying certification.

However, Carroll never raised his First Amendment claim either in the administrative or state proceedings, and the issue was never adjudicated by the ALJ, the Merit System Board, the Appellate Division, or the New Jersey Supreme Court. Moreover, Carroll's federal action is not "inextricably intertwined" with the state court rulings because the relief Carroll requests in his federal action would not, if granted, "reverse" or "void" the rulings of the Appellate Division or the New Jersey Supreme Court.

The prior litigation centered on Carroll's attempt to win reinstatement and back

6

pay. The Merit System Board ordered that Carroll be reinstated and awarded back pay, and the Appellate Division upheld the findings of the Merit System Board. If Carroll were contesting his own reinstatement, then Rooker-Feldman would apply because he would be requesting that the District Court void the state court adjudications – which were in his favor. But Carroll is not doing anything so odd as that. Rather, he alleges that Defendants violated his First Amendment rights, and he seeks compensatory and punitive damages that were not awarded to him in the prior state proceeding. See, e.g., App. 48, Complaint at para. 43 ("Carroll demands judgment against these defendants for damages together with interest, attorney's fees, and costs of suit.") For example, although Carroll sought $90,000 in attorney's fees in his prior action, the Merit System Board awarded him only $39,951 in attorney's fees.

Defendants argue that a district court ruling awarding Carroll additional attorney's fees would implicitly reject the Merit System Board's finding that Carroll was entitled only to $39,951, and thus Carroll's entire claim is barred under Rooker-Feldman. Defendants overreach. An award of additional attorney's fees would not reverse or void the rulings of the Appellate Division or the New Jersey Supreme Court.

In sum, Rooker-Feldman would only apply here if Carroll were seeking to reverse his victory in the New Jersey state courts. Because Carroll does not seek to trade victory for defeat, Rooker-Feldman is inapplicable.

7