Honorable Angelo A. GUARINO, Senior Judge of the Philadelphia Court of Common Pleas, Plaintiff,

v.

Honorable Rolf LARSEN, Justice of the Supreme Court of Pennsylvania, et al., Defendants.

Civ. A. No. 93–0734.

United States District Court, E.D. Pennsylvania.

April 16, 1993.

Harry Lore, Philadelphia, PA, for plaintiff.

Arlin M. Adams, Charles C. Hileman, III, Joseph A. Sullivan, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for defendants.

## I. MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Before the Court is plaintiff's motion for declaratory judgment and injunctive relief. Plaintiff is a retired judge of the Court of Common Pleas of the First Judicial District of Pennsylvania (Philadelphia County) who, since his mandatory retirement at age seven-

ty and until November 10, 1992, had served as a senior judge, that is, a retired judge on active service, pursuant to assignments of monthly duration by the Supreme Court of Pennsylvania. Defendants in this action are the Justices of the Supreme Court of Pennsylvania and Nancy M. Sobolevitch, the Court Administrator of the Commonwealth of Pennsylvania. Plaintiff asserts violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and of the laws and Constitution of the Commonwealth of Pennsylvania. These violations are based on an Order dated November 10, 1992, which was handed to Judge Guarino in the midst of a major felony trial and which, in effect, ordered him to leave the bench without prior notice or notification of any charges against him. In this order, Mr. Justice Rolf Larsen of the Pennsylvania Supreme Court revoked Judge Guarino's assignment as senior judge for the period of November 1 through November 30, 1992, and further ordered that Judge Guarino was not authorized to complete unfinished business that was pending before him. Judge Guarino has not been reassigned active service, nor has he been permitted to complete pending unfinished legal matters, including opinions due on cases over which he presided.

On March 3, 1993, at a conference in chambers, this Court determined, and the parties agreed, that a hearing on the merits of Judge Guarino's claims would be held pursuant to Fed.R.Civ.P. 65(a)(2). The hearing was held on March 11, 1993. On the basis of evidence presented at this hearing together with the record in this matter, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Judge Guarino was elected by popular vote to the Philadelphia Court of Common Pleas in January, 1974. After serving a ten year term, he was approved for retention by popular vote. After seventeen years as an active judge, he reached age seventy on March 21, 1991. Pursuant to the Pennsylvania Constitution, Article V, Section 16(b), age seventy is the age for mandatory retirement for

**1042**

judges. Prior to his mandatory retirement, Judge Guarino applied to the Administrative Office of the Pennsylvania Courts for assignment as a senior judge. Pursuant to Rule 701 of the Pennsylvania Rules of Judicial Administration, he certified that he had not engaged in the practice of law or in any activity incompatible with the judicial office nor did he intend to engage in the practice of law in the future. He also certified that he had not been defeated for re-election, that he had served as a judge by election or appointment for an aggregate of at least six years, and that he agreed that he might be assigned as a senior judge to any court in the Commonwealth of Pennsylvania. He also agreed to undergo a physical and/or psychological examination.

On March 21, 1991, defendant Nancy M. Sobolevitch, Court Administrator of the Administrative Office of the Pennsylvania Courts, wrote to Judge Guarino, stating that he had met all of the qualifications to serve as a senior judge under Rule 701. His appointment was effective as of March 24, 1991. Judge Guarino received an order of assignment from the Pennsylvania Supreme Court for a term of one month duration, which assignment was renewed for each consecutive one month term from the time of his retirement until November 10, 1992, except for a ten-day period in April, 1992. According to Ms. Sobolevitch, Judge Guarino's April assignment was delayed due to the filing of a civil action in federal court, captioned *Jeffrey C. Levy, et al. v. Guarino,* which action will be discussed below.

Pursuant to Rule 701 and by the terms of each order, each one-month term continued in effect after its stated expiration date for such time as was required to complete unfinished business pending before him.

After his retirement, there was no difference in the level of work Judge Guarino performed. Both before his retirement and during his service as a senior judge, Judge Guarino presided over an average of 100 jury trials a year, most of which were major felony trials. In recognition of his outstanding ability to expedite trials, Judge Guarino, contrary to the usual assignments of senior judges, was granted a full staff including a secretary and law clerk, his own courtroom, and the continuation of his own case list. On November 10, 1992, his case list included 23 cases ready for trial; 63 cases with pending hearings on post-trial motions, sentencings or violations of probation; 76 cases in which bench warrants had been issued; and 11 cases on appeal for which written opinions were owed to the Pennsylvania Superior Court.

As a senior judge, Judge Guarino was paid a per diem rate of $250.00 for court time only. Due to a lack of available funding, however, he was usually paid for only about thirteen days per month regardless of the number of days of he actually served. For the year 1991, Judge Guarino earned approximately $30,000 as a senior judge.

As testified by the Honorable Alex Bonavitacola, administrative judge for the Philadelphia Court of Common Pleas, Judge Guarino has been "one of the hardest working judges I've ever known." Judge Guarino has also won several awards including the "Golden Crowbar Award" presented by the Pennsylvania Conference of State Trial Judges in 1980; the Philadelphia Trial Lawyers Association Achievement Award in May, 1983; and *Philadelphia Magazine* "Best of Philly" Award for 1987.

On the morning of November 10, 1992, Judge Guarino charged a jury in a criminal case and sent them out to deliberate. He then began trial in a major felony criminal case. The jury for this trial had been empanelled, Judge Guarino had given his opening remarks, and counsel had given their opening statements. At this point, with prosecution ready to call its first witness, Judge Bonavitacola, the administrative judge for the Philadelphia Court of Common Pleas, entered the courtroom and requested that the court officer ask Judge Guarino to take a recess. The jury adjourned to the jury room, and Judge Guarino then met with Judge Bonavitacola in Judge Guarino's robing room. Judge Bonavitacola handed Judge Guarino an order that Judge Bonavitacola had received from the Pennsylvania Supreme Court by facsimile ("fax") at 3:55 that afternoon. The order, *in toto,* stated:

AND NOW, this 10th day of November, 1992, the Order entered on October 26, 1992, assigning the Honorable Angelo Guarino to the Philadelphia Court of Common Pleas for the period of November 1, 1992, to November 30, 1992, is hereby revoked. Judge Guarino is not authorized to complete unfinished business pending before him with regard to his assignment for the above period as provided by Pa. R.Jud.Adm. 701(f).

BY THE COURT:

Rolf Larsen /s/

Judge Bonavitacola had personally hand-delivered this order (hereinafter "Order of November 10th") to Judge Guarino out of his consideration for Judge Guarino, who had been his friend and colleague for thirty years, and because he felt he owed it to Judge Guarino's personal dignity. As Judge Guarino testified, he was "stunned" and "mortified."

Judge Guarino returned to the courtroom and directed his court officer to instruct the jury that they were to return in the morning. He then made an announcement in open court that he was unable to continue with proceedings. These proceedings included the criminal trial that was in progress, as well as post-trial motions, violations of probation and sentencings that had been scheduled for later that afternoon. Among those present in the courtroom were undergraduate students from Villanova University who had been observing the court proceedings. As Judge Guarino testified, he was "put to shame."

Judge Guarino returned to his chambers and made a telephone call to the Pennsylvania Supreme Court. Justice Larsen returned his call, and told him, in essence, "You received the order. Proceed accordingly." When Judge Guarino voiced concern about possible double jeopardy in the on-going criminal trial, he was told that another judge would complete the trial.

Judge Guarino then went to his home, where his wife had already heard reports on the radio that "he had been removed from the bench." Friends and family called him, asking, "What did you do?"

The next day, there were articles in the newspapers, one of which reported that Judge Guarino had been removed in a "highly unusual move." *Philadelphia Inquirer*, B1, November 11, 1992. That article also quoted David Rudovsky, an attorney for the American Civil Liberties Union ("ACLU"), who represented plaintiffs in an action brought as a class action against Judge Guarino in federal district court, captioned *Jeffrey C. Levy, et al. v. Guarino*, Civil Action No. 92–1609. Mr. Rudovsky was quoted as saying that he believed that Judge Guarino was removed for "mistreating" potential jurors. "It demonstrates corrective action by the state courts," Mr. Rudovsky was quoted as saying. *Id.* at B6.

This Court takes judicial notice of *Levy*, Civil Action No. 92–1609, and of the documents filed therein, which action was before the Honorable Jay C. Waldman of this court. The proceedings in *Levy* which apparently form the basis for Judge Guarino's removal from the bench will be summarized below. In brief, the named plaintiffs in *Levy* included two venirepersons who had appeared before Judge Guarino, whose responses at voir dire, in Judge Guarino's opinion, were attempts to avoid jury duty and amounted to refusals to serve as jurors. Judge Guarino had served these venirepersons with subpoenas requiring them to return to his courtroom on the following day as a form of alternate service, and as an assurance to the other venirepersons that such conduct would not be tolerated.

The *Levy* action was brought pursuant to 42 U.S.C. § 1983, asserting that Judge Guarino's actions had violated the first, fourth and fourteenth amendment rights of these venirepersons, and requesting a preliminary injunction. On April 8, 1992, based on a stipulation of the parties, hereinafter quoted *in toto*, the *Levy* plaintiffs withdrew their motion for a preliminary injunction. The parties proceeded with discovery.

On August 4, 1992, Judge Guarino filed a document in *Levy* outlining the procedures he would employ when he determined a venireperson was refusing to serve. On August 14, 1992, he filed a supplemental document regarding the procedures he would employ.

Judge Guarino remained on the bench, proceeding with his trial list.

On October 22, 1992, during voir dire in a criminal matter, Judge Guarino held a venireperson in contempt. On November 5, 1992, the *Levy* plaintiffs moved to re-open their motion for preliminary injunction based on their assertion that Judge Guarino, in holding the venireperson in contempt, had violated his agreement.

Five days later, Mr. Justice Larsen issued his Order of November 10th, quoted *in toto* above, removing Judge Guarino from the bench, stating no reasons for his action. This Court notes that Judge Guarino was represented in *Levy* by the Deputy Legal Counsel for the Court Administrator of Pennsylvania.

Since receiving Mr. Justice Larsen's Order of November 10th, Judge Guarino has not been reassigned to any court. He has handled no cases, and his cases which were pending have been reassigned to other judges. In compliance with the Order of November 10th, he has not written any opinions nor has he performed any other judicial duties.

As stated heretofore, the procedure for assignment of retired judges as senior judges begins when, pursuant to Rule 701(a) of the Pennsylvania Rules of Judicial Administration, an otherwise qualified retired judge files an application for certification with the Administrative Office. After approval by the Court Administrator, the judge is eligible for assignment. A president judge of a court which is in need of temporary judicial service sends a request to the Court Administrator, often naming the judges requested. The names of the retired judges eligible for assignment are then entered on a master form by the Court Administrator's judicial assignment clerk and then reviewed by the Court Administrator. If she approves, the Court Administrator, pursuant to Rule 701(e) of the Pennsylvania Rules of Judicial Administration, recommends assignment of a judge by forwarding his or her name to Mr. Justice Larsen of the Pennsylvania Supreme Court. The present Court Administrator is defendant Nancy M. Sobolevitch. It is her understanding that the form is then circulated to all of the justices. According to Ms. Sobolevitch, no judge who has applied for senior status since the enactment of the mandatory retirement provision has been denied senior status.

Ms. Sobolevitch received a request for each of the months of December, 1992; January, 1993; February, 1993; and March, 1993; from the Honorable Edward Blake, President Judge of the Philadelphia Court of Common Pleas, requesting by name several judges including Judge Guarino be assigned to active service. Ms. Sobolevitch's assignment clerk has entered Judge Guarino's name on each of the monthly forms for December, 1992, through March, 1993. Nevertheless, each of the monthly forms for December, 1992, through March, 1993, show a line drawn through Judge Guarino's name with the word "void" inserted. In this manner, Judge Guarino's assignment as a senior judge was not recommended to the Pennsylvania Supreme Court for the months of December, 1992, through March, 1993.

Ms. Sobolevitch's decision to give no recommendation was based on her conversations with one or more of the justices of the Pennsylvania Supreme Court and on conversations between her judicial assignment clerk and Mr. Justice Larsen's law clerk. The 'gist' of these conversations, as testified by Ms. Sobolevitch, was that the court "was not inclined" to approve the assignment of Judge Guarino. From these conversations, Ms. Sobolevitch "gathered that it was the court's wish to keep Guarino off the bench." Therefore, testified Ms. Sobolevitch, she "was not inclined to recommend" his assignment to the court.

According to Ms. Sobolevitch, this regimen whereby she, as Court Administrator, failed to recommend the assignment of a retired judge to senior status was used for the first time in connection with Judge Guarino.

There were no memorializations of the conversations between Ms. Sobolevitch and Mr. Justice Larsen. Neither President Judge Blake nor Judge Guarino was notified of any reason for the court's failure to assign Judge Guarino for the months of December, 1992, through March, 1993. According to Judge

Bonavitacola, there has continued to be need for the services of Judge Guarino, as there is a "sizeable inventory" of cases in the Philadelphia Court of Common Pleas.

As stated heretofore, Judge Guarino received Mr. Justice Larsen's Order of November 10th from Judge Bonavitacola, while Judge Guarino was presiding over a major felony trial. Judge Guarino was given no advance notice of the Order. Prior to receiving it, he had received no notice of any charges that the Pennsylvania Supreme Court may have been considering against him, nor had he received an opportunity to respond to any such charges.

The Order of November 10th is docketed as "No. 92 R1105 Judicial Assignment Docket." Judge Guarino's assignment number for the month of November was "1105." This Court takes judicial notice that "No. 92 R1105 Judicial Assignment Docket" appearing on the Order of November 10th is not a docket number for a judicial action pending before the Pennsylvania Supreme Court, nor is it the number of a disciplinary proceeding before that court.

According to Ms. Sobolevitch, the procedure employed by Mr. Justice Larsen in issuing his Order of November 10th that revoked Judge Guarino's November assignment has been used only once before. In that case, a senior judge's assignment was revoked at approximately mid-day while the judge was on the bench after he received a target letter from the United States Attorney's Office in connection with a federal grand jury investigation of allegations that he had accepted a bribe from the roofers' union.

No criminal conduct has been alleged in connection with Judge Guarino. He is under no criminal investigation.

As stated heretofore, this Court has taken judicial notice of *Jeffrey C. Levy, et al. v. Guarino,* Civil Action No. 92–1609, and of the documents filed therein. In *Levy,* the plaintiffs filed their action against Judge Guarino on March 19, 1992. They filed a motion for preliminary injunction on March 25, 1992. Howard M. Holmes, Deputy Legal Counsel to the Court Administrator of Pennsylvania,

filed his appearance for defendant Judge Guarino on April 8, 1992, on which date plaintiffs withdrew their motion for preliminary injunction based on a stipulation entered into by all counsel. This stipulation stated in pertinent part:

Counsel for the Honorable Angelo Guarino has been authorized by Judge Guarino to represent to this Court, in the interests of comity between the state and federal courts, that pending final disposition of this action he will not exercise judicial authority to require venire-persons appearing before him, who have not been selected for a jury, to return to his court for further or additional service. He further assures this Court that he will not fine or punish venire-persons without due process of law.

\*　　\*　　\*　　\*　　\*　　\*

Four months later, on August 4, 1992, Judge Guarino supplemented the stipulation by filing a document with the *Levy* court entitled "Statement to Federal District Court on Behalf of Judge Angelo A. Guarino regarding Procedures To Be Employed by the State Trial Judge Where Venire–Person Has Refused to Serve." In the document filed on August 4, 1992, Judge Guarino stated:

As a matter of comity between the state and federal courts and to supplement the Record in this matter Judge Angelo A. Guarino has now authorized his counsel to make the following representations and assurances of record to the federal district court on his behalf, with respect to the procedure he will employ in future when faced with a venire-person who, in the opinion of Judge Guarino, has refused in open court to serve as a juror:

1. When in the course of voir dire, the responses of an individual venireperson in the presence of the court are such, in Judge Guarino's opinion, as to constitute an intentional refusal to serve as a juror in the presence of the court, he will advise the individual that these responses, in the opinion of the court, constitute a refusal to serve.

2. He will instruct the individual that a venire-person who in open court refuses to serve may summarily be found to have

committed contempt of court. *See* 42 Pa. C.S. § 4131(3).

3. He will instruct the individual that a finding that one is guilty of summary contempt of court in open court may subject one to fine or imprisonment. *See* 42 Pa. C.S. § 4131(3).

4. He will permit the individual to respond.

5. If the court finds that the individual has refused and continues to refuse to serve and the court deems it necessary to uphold the authority and dignity of the court and to prevent the obstruction of justice, the court will so state on the record, finding the individual guilty of summary contempt and imposing such penalty as is lawful and appropriate in the circumstances, and entering such Order on the record and in the presence of the individual.

In response to inquiry arising from his document of August 4, 1992, Judge Guarino filed a supplementary document with the *Levy* court on August 14, 1992, regarding the procedures he would employ, which stated:

1. When in the course of voir dire, an individual venire person makes responses or other statements in the presence of the court which, in Judge Guarino's opinion, (a) are or may be untrue, (b) are made for purposes of avoidance of jury duty and (c) have the effect of obstructing justice, Judge Guarino will consider, among any other relevant questions, the following issues:

A. May a state trial judge hold a juror in summary criminal contempt for refusing to serve in open court?

B. May a state trial judge base a finding that a juror has refused to serve, in whole or in part, on the juror's responses at voir dire which the state trial judge finds (i) are untrue, and (ii) are made with the intent of avoiding jury service?

C. In considering whether a juror has made untrue statements in attempted avoidance of jury service, what procedures, if any, in addition to those which the court already intends to provide, and what evidentiary considerations are appropriate?

2. Each of these questions and any other relevant legal or factual issues will be considered if and when the matter arises in the context of a judicial proceeding. In doing so, Judge Guarino is mindful of the dictates of the Pennsylvania Supreme Court that criminal contempt for misbehavior in the presence of the court requires proof beyond a reasonable doubt of misconduct in the presence of the court committed with intent to obstruct proceedings, which behavior actually obstructs the administration of justice. The record must establish each and every element of the offense. (Citations omitted).

2. (sic.) Whatever other procedures the court may hold to be appropriate if and when such issues arise, the court will certainly provide and engage in the colloquy set forth in the prior statement to this federal district court, including notice and opportunity for response. Any finding of contempt will be made on the record, with an appropriate and appealable order. (Citations omitted).

3. (sic.) The rulings of Judge Guarino, like those of any other judge or senior judge sitting in the court of common pleas, are subject to judicial review by the appellate courts of the Unified Judicial System of the Commonwealth of Pennsylvania, and the correction by that process of any judicial error he is alleged to have made.

On November 5, 1992, the *Levy* plaintiffs filed a motion to re-open their motion for preliminary injunction and a second motion to supplement the record, asserting that, on October 22, 1992, Judge Guarino had held another venireperson in contempt, allegedly in violation of his agreement.

On November 10, 1992, Mr. Justice Larsen issued his Order of November 10th, revoking Judge Guarino's November assignment as a senior judge, and stated that he was not authorized to complete unfinished business pending before him. In the Order of November 10th, as quoted *in toto* above, Mr. Justice Larsen gives no basis for his order removing Judge Guarino from the bench.

On November 16, 1992, Howard Holmes, as both Deputy Legal Counsel for the Court Administrator of Pennsylvania and attorney for defendant Judge Guarino, filed a motion to dismiss plaintiffs' motions. In his memorandum, with footnotes omitted, Holmes stated:

As widely reported in the Philadelphia Inquirer and Philadelphia Daily News, by Order dated November 10, 1992 the Pennsylvania Supreme Court revoked its administrative Order assigning Angelo A. Guarino as a Senior Judge to the Philadelphia Court of Common Pleas for the period November 1 through November 30, 1992. The Order also provided that Judge Guarino was not authorized to complete any unfinished business pending before him.... As of November 10, 1992, Angelo A. Guarino is no longer a sitting Judge for any purpose.

In light of these events, it is respectfully submitted that plaintiffs' motion(s) ... are moot. Indeed, given these events, it is further submitted that the case itself is now moot. Defendant therefore requests (1) that his motion to dismiss, previously filed in this matter, be considered amended to state as a further basis for dismissal, on grounds of lack of jurisdiction and lack of a claim for which relief may now be granted, the additional and dispositive ground of mootness; and (2) that the motion be granted....

The *Levy* plaintiffs, in light of Mr. Justice Larsen's Order of November 10th, agreed that there was no need for further legal proceedings in their action.

On November 25, 1992, Judge Waldman granted defendant's motion and dismissed the *Levy* case without prejudice to plaintiffs to refile should a future change of circumstances justify such action.

On February 11, 1993, Judge Guarino filed this federal action against the Justices of the Pennsylvania Supreme Court and Nancy M. Sobolevitch, the Court Administrator of the Administrative Office of the Pennsylvania Courts. From the date of the issuance of Mr. Justice Larsen's Order of November 10th through the date of Judge Guarino's filing of this action on February 11, 1993, the Pennsylvania Supreme Court took no action in connection with Mr. Justice Larsen's Order of November 10th.

On February 25, 1993, the parties in this action entered into a stipulation allowing defendants an extension of time until March 18, 1993, to answer, move or otherwise plead. At the time of entering into the stipulation, counsel for the defendants made no representations to Judge Guarino that the Pennsylvania Supreme Court was contemplating any proceedings involving him.

Nevertheless, on February 26, 1993, the Pennsylvania Supreme Court *per curiam* entered a Rule to Show Cause, which was delivered to Judge Guarino on March 1, 1993 and stated:

AND NOW, this 26th day of February, 1993, the Honorable Angelo A. Guarino and his counsel are directed to appear before the Court and to show cause why the order entered on November 10, 1992, revoking the order of October 26, 1992, assigning the Honorable Angelo A. Guarino to the Philadelphia Court of Common Pleas for the period of November 1, 1992, to November 30, 1992, should not remain in full force and effect.

Rule returnable with hearing thereon the 9th day of March, 1993, at 2:00 p.m., in the Supreme Court Courtroom, 8th Floor, City–County Building, Pittsburgh, Pennsylvania 15219.

This Rule to Show Cause is docketed as "No. 92 R1105 Judicial Assignment Docket." As stated heretofore, Judge Guarino's assignment number for the month of November, 1992, was "1105." Further, Mr. Justice Larsen's Order of November 10th was also docketed as "No. 92 R1105 Judicial Assignment Docket."

On March 2, 1993, Judge Guarino filed a motion requesting this Court to enjoin proceedings in the Pennsylvania Supreme Court and particularly the Rule to Show Cause hearing set for March 9, 1993. At a conference in chambers on March 3, 1993, this Court advised the parties that it would not entertain Judge Guarino's motion for injunctive relief until after a hearing on the merits of his claims. It was at this March 3rd

conference that the parties agreed that a hearing pursuant to Fed.R.Civ.P. 65(a)(2) on the merits would be held on March 11, 1993.

At the hearing on March 11, 1993, counsel for defendants delivered to this Court a per curiam order of the Pennsylvania Supreme Court that had been issued on March 10, 1993. This order, *in toto*, states:

AND NOW, this 10th day of March, 1993, a Rule having been entered on February 26, 1993, directing The Honorable Angelo A. Guarino and his counsel to appear before this Court and to show cause why the order entered on November 10, 1992, should not remain in full force and effect; and The Honorable Angelo A. Guarino and his counsel not having appeared in response thereto, the Rule is hereby made absolute, and the order entered on November 10, 1992, is affirmed.

The temporary assignment of a retired judge to judicial service is a matter solely within the discretion of this Court, and any such assignment may be revoked for any reason at this Court's discretion. The Court also notes that the following underlying facts and issues, which gave rise to the Court's November 10, 1992, order and which are a matter of public record in the complaint and subsequent filings in *Jeffrey C. Levy, et al. v. Angelo A. Guarino, Judge,* Civil Action No. 92–1609, in the United States District Court for the Eastern District of Pennsylvania, demonstrate that the order of November 10, 1992, was a proper exercise of this Court's discretion.

1. In that complaint, filed as a class action on March 19, 1992, and in related pleadings, four venire-persons, including the first-named plaintiff, Jeffrey C. Levy, assert that they had been summarily punished by Judge Guarino when, in the course of questioning for potential jury service, they gave truthful answers that did not satisfy Judge Guarino. The complaint alleges that, after being dismissed by Judge Guarino, each of these potential jurors was directed by Judge Guarino to return to court the next day and remain until excused and was threatened with contempt of court and possible arrest if he or she failed to do so. The complaint alleges

that Judge Guarino violated the venire-persons' First Amendment right of free speech and Fourteenth Amendment right not to be detained without due process of law under the United States Constitution. Plaintiffs sought an injunction prohibiting Judge Guarino from continuing such conduct.

2. On April 8, 1992, on the eve of a scheduled hearing on plaintiffs' motion for a preliminary injunction, at which the parties were to address the issue of Judge Guarino's conduct with regard to the venire-persons, a stipulation was entered into between the parties to *Levy v. Guarino,* in which Judge Guarino agreed that he would not require venire-persons appearing before him who have not been selected for jury service to return to his court for further service. Judge Guarino further assured the court that he would not fine or punish venire-persons without due process of law. As a result of this stipulation, obviating the need for the scheduled hearing, plaintiffs withdrew their motion for injunctive relief.

3. On November 5, 1992, the plaintiffs in *Levy v. Guarino* filed a motion to reopen plaintiffs' motion for a preliminary injunction, asserting that Judge Guarino had violated the stipulation between the parties by summarily holding another venire-person, Dr. Mary Cooper, in contempt for stating during voir dire that she had moral scruples that prevented her from passing judgment on another.

4. In *Levy v. Guarino,* Judge Guarino's deposition was taken, and Judge Guarino filed a motion to dismiss, followed by motions for summary judgment by both parties pursuant to which the parties addressed both procedural issues and the substantive allegations of the complaint, all of which pleadings were of record prior to this Court's November 10, 1992, order.

As a result of the foregoing events and the facts set forth in the pleadings and testimony, all of which were then before this Court, and in light of the issues raised thereby, this Court conferred and issued the November 10, 1992, order.

By virtue of the hearing held on March 9, 1993, pursuant to the Rule to Show Cause entered February 26, 1993, and being the first occasion on which the Court could conduct such hearing, the Court afforded Judge Guarino another opportunity to present all the facts, legal contentions and other considerations he deems appropriate and relevant to the underlying events and issues and to the issuance of the November 10, 1992, order.

The Court must emphasize that this order, making the Rule absolute and affirming the November 10, 1992, order, is without prejudice to the eligibility of Judge Guarino for assignment to temporary service as a Senior Judge in the future and is in no way to be interpreted as a reflection on Judge Guarino's long record of service as a Judge of the Philadelphia Court of Common Pleas or as a sanction or form of punishment against Judge Guarino. Rather, in view of all the facts and issues before the Court on November 10, 1992, the Court exercised its discretionary powers to revoke the prior order of October 26, 1992, which order was itself an exercise of the Court's discretionary powers to make assignments for temporary judicial service in appropriate circumstances.

Mr. Justice Montemuro did not participate in this matter.

This per curiam order of March 10, 1993, is docketed as "No. 92 R1105 Judicial Assignment Docket." As stated heretofore, this is the same docket number appearing on Mr. Justice Larsen's Order of November 10th and on the Rule to Show Cause of February 26, 1993. Judge Guarino's assignment number for the month of November, 1992, was "1105."

Judge Guarino has brought this action pursuant to 42 U.S.C. § 1983, asserting that he has been deprived of his rights, privileges and immunities as secured by the United States Constitution. He also asserts that this deprivation has been in violation of the laws and Constitution of the Commonwealth of Pennsylvania. He seeks declaratory, injunctive and compensatory relief.

## II. CONCLUSIONS OF LAW

### A. JURISDICTION

Defendants assert that this Court has no jurisdiction over this action. They assert that Judge Guarino is seeking review by this Court of the constitutionality of an adjudicative action by the highest court of a state which, pursuant to 28 U.S.C. § 1257, may be reviewed only by the Supreme Court of the United States.

This Court has determined that the action taken by Mr. Justice Larsen in issuing his Order of November 10th was not an adjudicative action. It was, instead, an administrative action, review of which by this Court is not barred by 28 U.S.C. § 1257. 28 U.S.C. § 1257, as amended in 1988, states in pertinent part:

(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where ... the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

\*      \*      \*      \*      \*      \*

The United States Supreme Court analyzed the prior version of Section 1257 in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983). This analysis; which has been denominated the *Rooker–Feldman* doctrine, remains viable under the present statute. *Blake v. Papadakos*, 953 F.2d 68, 71 (3rd Cir.1992). Under the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding. *Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315 n. 16; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *Blake v. Papadakos*, 953

F.2d 68, 71 (3rd Cir.1992). The doctrine, however, does not bar a district court from reviewing administrative decisions of a state's highest court. *Blake*, 953 F.2d at 72. As the Third Circuit pointed out in *Blake, id.* at 73, when a plaintiff brings an action directly in federal district court claiming that an administrative action of the state's highest court has violated his constitutional rights, the *Rooker–Feldman* doctrine does not preclude federal jurisdiction, as no adjudication by the state court has preceded the federal action.

As the Supreme Court explained in *Feldman*, 460 U.S. at 479, 103 S.Ct. at 1313, an adjudicative act involves the application of existing laws to the facts in a particular case. An administrative/non-adjudicative act, in contrast, generally requires not the application of existing laws to particular facts but rather "look[ing] into the future and chang[ing] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Feldman*, 460 U.S. at 477, 103 S.Ct. at 1312. The form of the proceeding is not significant; rather, it is the nature and effect which is controlling. *Id.*

This Court has no difficulty in concluding that the action of Mr. Justice Larsen in issuing the Order of November 10th was administrative and thus, that this Court has jurisdiction over this matter. First, when Mr. Justice Larsen issued his Order of November 10th, he was not applying existing laws to the facts in a particular case, as there was no action of any kind pending before the Pennsylvania Supreme Court, or before any Pennsylvania state court, in connection with Judge Guarino. As stated in the Pennsylvania Supreme Court's per curiam order of March 10, 1993, quoted *in toto*, above, Justice Larsen's Order of November 10th was issued "[a]s a result of the . . . events and the facts set forth in the pleadings and testimony [in *Levy*], and in light of the issues raised thereby, . . . ."

*Levy*, as heretofore summarized in detail, was an action in the United States District Court for the Eastern District of Pennsylvania, in which no hearings were held nor did the district court in *Levy* make any findings of fact. No decisions were made by the *Levy* court on the merits of the allegations brought against Judge Guarino. As set forth above, plaintiffs had filed a motion for preliminary injunction which was withdrawn on the basis of a stipulation concerning Judge Guarino's future actions in connection with his conducting voir dire. This stipulation was supplemented twice by Judge Guarino, setting forth in detail the procedure he intended to follow in protecting the constitutional rights of venirepersons whose responses, in his opinion, constituted a refusal to serve on a jury. Judge Guarino, having filed a motion to dismiss for lack of jurisdiction, had not answered the complaint.

On November 5, 1992, the *Levy* plaintiffs filed a motion to re-open their motion for preliminary injunction, claiming that Judge Guarino had violated his agreement. In connection with the *Levy* plaintiffs' motion, the district court again held no hearing nor did it make findings of fact because, on November 16, 1992, a motion was filed to dismiss plaintiffs' motion as well as the *Levy* action itself for mootness. This motion to dismiss was filed by Howard Holmes, as Deputy Legal Counsel for the Court Administrator of Pennsylvania and as counsel for Judge Guarino. In his memorandum in support of his motion to dismiss, as quoted above, Mr. Holmes stated that Mr. Justice Larsen's Order of November 10th had "revoked [the] administrative order assigning Angelo A. Guarino as a Senior Judge" with the result that "Angelo A. Guarino is no longer a sitting Judge for any purpose."

With the acquiescence of the *Levy* plaintiffs, the district court granted the motion to dismiss without prejudice to plaintiffs refiling should a future change of circumstances justify such action. In granting the motion to dismiss, the *Levy* court held no hearing and made no findings of fact or conclusions of law concerning the *Levy* plaintiffs' allegations that Judge Guarino had violated the agreement.

In the *Levy* case, the United States District Court made no determinations on the merits of the *Levy* plaintiffs' claims.

This Court notes that, at the Rule 65(a)(2) hearing that was held before this Court on March 11, 1993, on the merits of Judge Guarino's claims against defendants Pennsylvania Supreme Court and Nancy M. Sobolevitch, Judge Guarino asserted that contrary to the allegations of the *Levy* plaintiffs, he had acted in full compliance with the agreement for conducting the voir dire.

With no proceedings of any kind before the Pennsylvania Supreme Court in connection with Judge Guarino, Mr. Justice Larsen issued his Order of November 10th based on unanswered allegations in *Levy.* Mr. Justice Larsen gave no notice to Judge Guarino of any charges against him, nor was Judge Guarino afforded an opportunity to respond to them. This was not an adjudicative decision of the Pennsylvania Supreme Court, nor was it an adjudicative decision of Mr. Justice Larsen. It was an administrative, non-adjudicative act.

It is apparent that the Pennsylvania Supreme Court did not consider Mr. Justice Larsen's Order of November 10th an adjudicative order. In its per curiam order of March 10, 1993, quoted *in toto* above, the Pennsylvania Supreme Court equates the administrative order by which Judge Guarino was assigned with Mr. Justice Larsen's Order of November 10th revoking that assignment. The court states:

> The temporary assignment of a retired judge to judicial service is a matter solely within the discretion of this Court, and any such assignment may be revoked for any reason at this Court's discretion.

Furthermore, both the order by which Judge Guarino was assigned and Mr. Justice Larsen's Order of November 10th, as well as the Rule to Show Cause issued by the Pennsylvania Supreme Court on February 25, 1993, and the per curiam order issued by the Pennsylvania Supreme Court on March 10, 1993, were not docketed as judicial litigation, nor as a disciplinary matter pending before the Pennsylvania Supreme Court. Instead, each was docketed as an administrative matter, with the designation of "No. 92 R1105 Judicial Assignment Docket." As stated heretofore, Judge Guarino's assignment number for the month of November, 1992, was "1105."

The action by Mr. Justice Larsen in issuing his Order of November 10th having been an administrative/non-adjudicative act, this Court has jurisdiction over Judge Guarino's constitutional claims pursuant to the *Rooker-Feldman* doctrine.

## B. JUSTICE LARSEN'S AUTHORITY TO ISSUE THE ORDER OF NOVEMBER 10TH

Article V, Section 18 of the Constitution of Pennsylvania, entitled "Suspension, removal, discipline and compulsory retirement," sets forth the procedure under which a justice or judge may be suspended, removed or otherwise disciplined. Section 18 states that this procedure is to apply to activities prohibited by Section 17, or for misconduct in office, neglect of duty, failure to perform duties, or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

Pursuant to Section 18, the Judicial Inquiry and Review Board ("JIRB") is charged with the duty of investigating complaints or reports of matters that may be grounds for suspension, removal, discipline or compulsory retirement of justices and judges. After such an investigation, the JIRB may order a hearing, after which, if the JIRB finds good cause for suspension, removal, discipline or compulsory retirement, it may make a recommendation to the Pennsylvania Supreme Court. After receiving the recommendation of the JIRB, the Pennsylvania Supreme Court reviews de novo the record of the JIRB's proceedings on the law and facts, and may permit the introduction of additional evidence. On the basis of its de novo review, the Supreme Court may order the suspension, removal, discipline or compulsory retirement of the justice or judge, or wholly reject the recommendation, as it finds just and proper. Upon an order of suspension or removal, the justice or judge is suspended or removed from office, and his or her salary ceases from the date of the order.

Section 18 is the only section of Article V dealing with the suspension, removal, discipline and compulsory retirement of justices

and judges. Section 18, by its terms, does not distinguish between active judges and senior judges. It does not state that active judges fall under its procedural protections while senior judges, by virtue of their having reached the mandatory retirement age of seventy, do not.

Section 18 empowers the Supreme Court to prescribe rules of procedure for the JIRB. These rules have been promulgated as the Pennsylvania Rules of Procedure Governing Judicial Inquiry and Review Board. They are codified at Chapter 41, Title 204 of the Pennsylvania Code. On November 5, 1992, five days before Mr. Justice Larsen issued his Order of November 10th, the Pennsylvania Supreme Court adopted Rule 10(a), entitled "Procedural Rights of Judicial Officers," which states that after formal proceedings have been instituted by the JIRB, a panel shall be appointed by the Chairman of the JIRB to conduct a full hearing on the charges. At this full hearing before the panel,

> the judicial officer shall be given a reasonable opportunity to defend against the charges. The judicial officer shall have the right to introduce evidence, to be represented by counsel, and to examine and cross-examine witnesses.

Following the full hearing as prescribed in Rule 10, the panel must prepare, pursuant to Rule 12, its report including any recommended sanctions, and transmit this report to the JIRB. The prosecutor and the judicial officer may then file a written response to the report, and the JIRB may permit the prosecutor and judicial officer to present oral argument. Pursuant to Rule 13, after full consideration of the record, the panel's report and any filed objections, the JIRB must vote to determine its recommendation to the Pennsylvania Supreme Court. Any recommendation for sanctions must be by majority vote.

Pursuant to Rule 14, in cases where the JIRB makes a recommendation to the Pennsylvania Supreme Court, it must send the entire record including transcriptions together with its report setting forth the findings of fact and conclusions of law underlying its recommendation. The Pennsylvania Supreme Court then reviews the entire record de novo. As stated by the Pennsylvania Supreme Court in *Matter of Chiovero,* 524 Pa. 181, 570 A.2d 57, 60 (1990), "[The Pennsylvania Supreme Court is] vested with the responsibility of making an independent review of the record created by the [JIRB] to determine for ourselves whether the charges have been established by clear and convincing evidence."

Although Section 18 of Article V is the only section of the Pennsylvania Constitution dealing with the suspension, removal, discipline or compulsory retirement of justices and judges; and although neither Section 18 nor the Rules of Procedure Governing Judicial Inquiry and Review Board make any differentiation between active and senior judges; still, Mr. Justice Larsen did not utilize the procedure of Section 18 in removing Judge Guarino from the bench. No complaints were submitted to the JIRB concerning Judge Guarino's treatment of venirepersons. Judge Guarino was presented with no formal charges. No panel was appointed, before which Judge Guarino was afforded a full hearing with right to be represented by counsel and to defend himself against any charges through the introduction of evidence and the examination and cross-examination of witnesses. In the Order of November 10th, Mr. Justice Larsen did not even intimate the basis for his Order. Judge Guarino was simply removed from the bench in the middle of a major felony trial without notice or the opportunity to be heard.

Nevertheless, defendants assert that, because Judge Guarino was a senior judge rather than an active judge, Mr. Justice Larsen in issuing the Order of November 10th was under no obligation to proceed pursuant to the procedural protections established under Article V, Section 18. Defendants assert that Mr. Justice Larsen's Order of November 10th was within the discretionary authority vested in the Pennsylvania Supreme Court under the Pennsylvania Constitution as found in Article V, Sections 1 and 10(a), and Rule 701 of the Pennsylvania Rules of Judicial Administration.

Article V, Section 1 of the Pennsylvania Constitution states that "[t]he judicial power

of the Commonwealth shall be vested in a unified judicial system." Section 10(a) states that within this unified system, "[t]he Supreme Court shall exercise general supervisory and administrative authority over all the courts...." Pursuant to its supervisory and administrative authority, the Pennsylvania Supreme Court has promulgated Rule 701 of the Pennsylvania Rules of Judicial Administration, entitled "Assignment of Judges to Courts," which this Court has summarized in its findings of fact, above.

Although not cited by the defendants as a source of the alleged discretionary authority, it is Article V, Section 16(c) of the Pennsylvania Constitution which authorizes the assignment of senior judges by the Pennsylvania Supreme Court. Rule 701 has been promulgated pursuant to that authority.

A thorough review of Sections 1 and 10(a), as well as Sections 16(c) and Rule 701, reveals nothing which could logically be construed as authorizing a justice of the Pennsylvania Supreme Court at his discretion to remove a retired judge who has been assigned to senior status. Rule 701(f) states that a senior judge is assigned for a specific term that is to continue after its stated expiration date for such time as may be required to complete unfinished business pending before him or her. Pursuant to Rule 701(f) and the express language of Judge Guarino's assignment, his period of assignment was for the period of November 1 through 30, 1992, and was to continue until completion of the matters pending before him which, as stated heretofore, consisted of 23 cases ready for trial; 63 cases with pending hearings on post-trial motions, sentencings or violations of probation; 76 cases in which bench warrants had been issued; and 11 cases on appeal for which written opinions were owed to the Superior Court.

Pursuant to Rule 701(a), only former or retired judges are eligible for assignment as senior judges, and they are eligible only if they have not been defeated for re-election and have served for an aggregate of at least ten years of elected and/or appointed service, except that a duly elected judge who has served for six years at the time he or she reaches age 70 is eligible for assignment. A judge appointed to senior status, thus, is required to have been a duly elected judge. Judge Guarino, as stated heretofore, was elected by popular vote to the Philadelphia Court of Common Pleas in January, 1974, and was approved for retention by popular vote after serving ten years. When he reached the age for mandatory retirement in 1991, he had approximately three years remaining in his current term. He filed a statement with the Administrative Office of the Pennsylvania Courts stating that he was willing to continue as a senior judge and, contrary to the usual assignments of senior judges, Judge Guarino was granted a full staff including a secretary and law clerk, his own courtroom, and the continuation of his case list. There was no change in his level of work.

In Section 1, Section 10(a) and Rule 701, there is no language, explicit or implicit, that exempts a senior judge from the procedural protections of Section 18 of Article V. Nonetheless, defendants assert that Judge Guarino is not entitled to the protections of Section 18 which, as stated heretofore, include the Pennsylvania Supreme Court's de novo review of the record created by the JIRB to determine whether charges have been established by clear and convincing evidence. Defendants assert that the constitutionally mandated procedural protections of Section 18 no longer apply to judges once they take senior status. Defendants assert that, based on this change in status, the Pennsylvania Supreme Court assumes the asserted discretionary power to summarily remove any senior judge from the bench in the middle of a major felony trial, without notice of charges against him or her, nor opportunity to respond.

Defendants argue that the Pennsylvania Supreme Court's asserted discretionary authority to remove a sitting senior judge derives from Section 1, Section 10(a) and Rule 701. They have not argued that this asserted discretionary authority derives from any remaining King's Bench powers. A discussion of the King's Bench powers in connection with discretionary powers, however, is instructive. As explained in the REFERENCE MANUAL NO. 5, "The Judiciary," of

the Pennsylvania Constitutional Convention of 1967–68, at 167–171 (hereinafter "The Judiciary"), the King's Bench powers derive from the Act of May 22, 1722, which vested in the Supreme Court of the colony of Pennsylvania the powers of the three superior courts of Westminster, England; namely, the courts of the King's Bench, the Common Pleas and the Exchequer. Inherent in the Court of the King's Bench was the power of general superintendency over inferior tribunals, a power that had been recognized in the common law from its beginnings.

As stated in "The Judiciary" at 167, the Supreme Court of Pennsylvania had affirmed the existence of its King's Bench powers over inferior courts on a number of occasions prior to the Pennsylvania Constitutional Convention of 1967–68. The Supreme Court of Pennsylvania, however, had never squarely decided whether its King's Bench powers extended to the removal, suspension or discipline of judges, but it had specifically held that the removal procedures that were explicitly authorized in the Pennsylvania Constitution as it existed prior to the Constitutional Convention of 1967–68 were exclusive. *Id.* at 158.

As stated in "The Judiciary" at 158, the Pennsylvania Constitution in effect at the time of the Constitutional Convention of 1967–68 specifically provided for only three methods of removing judges from office: (1) impeachment, (2) address, and (3) conviction of misbehavior in office or of any infamous crime. Of course, in running for re-election, judges were also subject to removal by the electorate. In the Pennsylvania Constitution prior to its amendment in 1968, there was no express provision for suspension or discipline of judges short of removal.

Following the Constitutional Convention of 1967–68, a new Judiciary Article V was adopted, including Section 18 of Article V which, as discussed above, establishes the JIRB and sets forth the procedure for the suspension, removal, discipline and compulsory retirement of justices and judges. Section 18, by its terms, is to apply to activities prohibited by Section 17 of Article V, or for misconduct in office, neglect of duty, failure to perform duties, or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute. As stated in Section 18(*l* ), a justice or judge must forfeit automatically his or her judicial office on conviction of misbehavior in office by a court, disbarment as a member of the bar or after being removed pursuant to Section 18. By its terms, Section 18 is in addition to and not in substitution for the provisions for impeachment contained in Article VI. These methods of suspension, removal, discipline and compulsory retirement of justices and judges appear to be the exclusive disciplinary authority for the Pennsylvania Supreme Court since the amendment to the Pennsylvania Constitution in 1968.

As a result of the amendments to the Constitution of Pennsylvania, it would appear that the voters have determined that any remaining King's Bench powers of the Pennsylvania Supreme Court do not include the powers of removal, suspension, discipline or compulsory retirement of justices or judges. Nevertheless, defendants assert in their memorandum filed on March 10, 1993, that "there is no question" that Mr. Justice Larsen acted within the discretionary authority of the Pennsylvania Supreme Court in removing Judge Guarino from the bench in the middle of a major felony trial. As a basis for this alleged discretionary power, the defendants rely upon the general language of Sections 1 and 10(a) of the Pennsylvania Constitution and of Rule 701 of the Pennsylvania Rules of Judicial Administration. They have provided this Court with no decision of the Pennsylvania Supreme Court which so holds. They have referred to no statute, nor to any rule of administrative procedure promulgated by the Pennsylvania Supreme Court pursuant to its general supervisory and administrative authority which so provides.

It appears to this Court that the discretionary authority of the Pennsylvania Supreme Court to discipline justices and judges, whether senior or active, is limited by the due process procedure provided to them by the Pennsylvania Constitution. It is not necessary, however, for this Court to predict that, in an adjudicative proceeding before the Pennsylvania Supreme Court as presently constituted, it would so hold. This Court will

determine only whether the procedure used by Mr. Justice Larsen in removing Judge Guarino from the bench without notice of charges and an opportunity to be heard was a violation of Judge Guarino's due process rights under the Fourteenth Amendment of the Constitution of the United States.

## C. CONSTITUTIONAL ISSUES

Defendants assert that this Court should deny relief in this matter because, under the Fourteenth Amendment to the Constitution of the United States, senior judges of the Commonwealth of Pennsylvania have no property rights or liberty interests as senior judges. In the alternative, defendants assert that a senior judge's property right or liberty interest is limited to the term of his or her assignment, which is subject to discretionary termination by the Pennsylvania Supreme Court.

### 1. JUDGE GUARINO'S PROPERTY RIGHT

As stated by the Supreme Court of the United States in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985):

> Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..."

*Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Judge Guarino, before reaching the mandatory retirement age of seventy, had been elected by popular vote to serve as a judge of the Philadelphia Court of Common Pleas and, after serving a ten year term, was approved for retention by popular vote. On reaching mandatory retirement age, he filed a certification of availability, thus submitting his offer to be assigned as a senior judge. The Pennsylvania Supreme Court approved his application and accepted his offer. Thereafter and for each subsequent month until November 10th, 1992, Judge Guarino received an assignment from the Pennsylvania Supreme Court. Pursuant to each of these orders and Rule 701 of the Pennsylvania Rules of Judicial Administration, his assignment continued in effect after its stated expiration date for such time as was required to complete unfinished business pending before him.

Both before his retirement and during his service as a senior judge, Judge Guarino presided over an average of 100 jury trials a year. According to the Honorable Alex Bonavitacola, administrative judge for the Philadelphia Court of Common Pleas, Judge Guarino has been one of the hardest working judges he has known. The fact that he is over seventy years of age did not interfere with his outstanding ability to expedite trials.

In recognition of his productivity, Judge Guarino was granted a full staff including a secretary and law clerk, his own courtroom, and the continuation of his own case list. This was contrary to the usual assignments of senior judges. His case list at the time Mr. Justice Larsen issued his Order of November 10th included 23 cases ready for trial; 63 cases with pending hearings on post-trial motions, sentencings or violations of probation; 76 cases in which bench warrants had been issued; and 11 cases on appeal for which written opinions were owed to the Superior Court.

Based on the explicit terms of his assignment, Judge Guarino was assigned to senior status for the period of November 1 through November 30, 1992, which period was to continue through the completion of his case list. Judge Guarino thus had a property right in being a senior judge, at a bare minimum, for the period of November 1 through November 30, 1992.

Pursuant to Mr. Justice Larsen's Order of November 10th, Judge Guarino was summarily removed from the bench in the middle of a major felony trial, and was not permitted to complete the unfinished business that was pending before him. Although defendants assert that, following Mr. Justice Larsen's Order of November 10th, Judge Guarino was and still remains eligible for assignment, defendants have failed to approve his assignment for the months of December, 1992, and of January, February and March, 1993. By their actions, defendants have effectively dis-

missed him from employment in which he had a property right.

In *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496, the Supreme Court held that when threatened with dismissal, a public employee with a property interest in his or her job is entitled to a pretermination opportunity to respond to charges coupled with post-termination procedures. As the Supreme Court stated, *id.* at 546, 105 S.Ct. at 1495, during the pretermination procedure, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

■ Before Mr. Justice Larsen issued his Order of November 10th removing Judge Guarino from the bench, Judge Guarino was given no oral or written notice by the Pennsylvania Supreme Court of any charges against him, nor was he presented with any explanation of evidence being considered by Mr. Justice Larsen. Although defendants assert that Mr. Justice Larsen's Order of November 10th was based on the Pennsylvania Supreme Court's cognizance of the complaint and filings in *Levy*, this cognizance of allegations—allegations that were unanswered by Judge Guarino—does not satisfy the *Loudermill* requirements of a pretermination opportunity to respond.

Defendants assert that, if due process required any hearing in connection with Mr. Justice Larsen's issuance of his Order of November 10th, this requirement was fulfilled by the hearing ordered pursuant to the Rule to Show Cause that was issued by the Pennsylvania Supreme Court on February 26, 1991. This contention completely ignores the holding of *Loudermill*. As the Supreme Court stated in *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493:

> We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." ... As we pointed out last Term, this rule has been settled for some time now. ·

*Id.* (citations omitted) (emphasis original).

As stated in *Loudermill*, *id.* at 547, 105 S.Ct. at 1496, the Due Process Clause requires *both* a pretermination opportunity to respond to charges and adequate post-termination procedures.

Further, *Loudermill*, *id.*, requires that the post-termination procedure be provided "at a meaningful time." As the *Loudermill* court stated, *id.*, "At some point a delay in the post-termination hearing would become a constitutional violation."

The Rule to Show Cause, as quoted *in toto* above, set forth no basis for Mr. Justice Larsen's Order of November 10th removing Judge Guarino from the bench, nor did it notify Judge Guarino of any charges against him that he would be required to rebut. It was issued three and one-half months after Mr. Justice Larsen's Order of November 10th. During that time, Judge Guarino remained off the bench, precluded from completing any unfinished business that had been pending before him. He was ordered to perform no judicial duties. Each month in which he has not been assigned has been another month in which he has been precluded from sitting as a senior judge. Not only does the Rule to Show Cause fail to satisfy the *Loudermill* requirement of a pre-termination opportunity to respond to charges, it fails even to satisfy the post-termination requirement of "adequate" procedure held within "a meaningful time."

In asserting that senior judges have no property interests pursuant to the Fourteenth Amendment and may be summarily dismissed, defendants appear to contend that senior judges are, in effect, employees at will. Such a contention is totally without merit. Under Pennsylvania law, an employee at will may be terminated at any time, for any reason, or for no reason at all. *E.g., Carlson v. Arnot–Ogden Memorial Hospital,* 918 F.2d 411 (3rd Cir.1990). As set forth above, a justice or judge of Pennsylvania cannot be suspended, removed, or disciplined except pursuant to Article V, Section 18 of the Pennsylvania Constitution. It is, thus, the Constitution of Pennsylvania which gives a justice or judge a property right that is protected by the Fourteenth Amendment of the United States Constitution. Section 18

makes no distinction, either explicit or implicit, between active and senior judges.

Article V, Section 18 of the Constitution of Pennsylvania mandates that a Pennsylvania justice or judge may not be suspended, removed or disciplined absent procedure before the JIRB followed by de novo review by the Pennsylvania Supreme Court. This mandate is rooted in the very foundation of our democratic system of government: that in order for there to be a system of justice capable of protecting our rights, the justices and judges of our courts must remain strong and independent, and render decisions free of any outside influence.

To be eligible for assignment as a senior judge, a judge is required to have served by election or appointment for an aggregate of ten years or, if duly elected at the time of mandatory retirement, for at least six years. To contend that an active judge who has become a senior judge is, in effect, an employee at will, is to contend that the Constitution of Pennsylvania protects and promotes the independence a judge who is under the age of seventy, but neither protects nor promotes the independence of that same judge once he or she has reached the age of seventy. Neither law nor logic supports such a distinction.

Our judicial system, both state and federal, demands judges with conviction as to what is right and what is wrong, and what is legal and what is not legal. It demands judges with fortitude to express legal opinions in which they truly believe. The allegations in *Levy* indicate that Judge Guarino believes very strongly that individuals called for jury service should be required to serve, barring legitimate reasons for being excused. All judges on the trial bench have encountered voir dire persons who attempt through their answers to avoid one of the greatest responsibilities of citizenship, which is service as a juror in a criminal trial, charged with determining the guilt or non-guilt of a fellow member of society. It may well be that Judge Guarino was overzealous in his efforts to have all qualified venirepersons available for jury service. In his zeal, he may have violated the constitutional rights—as alleged in

*Levy* —of some of the members of the panel. That issue is not before this Court.

What is before this Court is defendants' apparent contention that Pennsylvania's senior judges are, in effect, employees at will who may be removed from the bench without notice, without charges, and without a hearing, pursuant to the action of one justice of the Pennsylvania Supreme Court.

If our judiciary is to sustain its independent role in our democratic system of government, no judge can be considered an employee at will, subject to summary removal from the bench based on a decision made during the course of trial. Our judicial system was designed with the understanding that judges will occasionally make errors. Appellate procedure has been provided for the correction of errors. If a justice of the highest court of any state or of the United States were to eschew the appellate procedure and instead, remove a judge on the basis that someone has filed a complaint against him or her, there would be few sitting judges.

Senior judges, like all sitting judges, must remain strong, courageous and independent. Defendants' apparent contention that senior judges are, in effect, employees at will removable from the bench based on the will of a justice of the Pennsylvania Supreme Court strikes at the very foundation of our democratic system of justice.

This Court determines that Judge Guarino had a property right as a senior judge. Not only is this property right based on his assignment for the term of November 1 through November 30, 1992, which term continued in effect after its stated expiration date for such time as was required to complete the matters pending before him on his case list. Judge Guarino's property right was also based on the due process guarantee provided to all Pennsylvania justices and judges under the Constitution of Pennsylvania. This Court determines that Judge Guarino was deprived of his property right without due process of law in that he was given no pretermination oral or written notice by the Pennsylvania Supreme Court of any charges against him; no explanation of any evidence the Pennsylvania Supreme

Court considered as a basis for his removal; and no opportunity to present his side of the story at a pretermination hearing. Furthermore, this Court determines that Judge Guarino was given no meaningful post-termination procedure. Therefore, this Court will declare that defendants have deprived Judge Guarino of his property right in violation of the Fourteenth Amendment of the Constitution of the United States without due process of law.

## 2. JUDGE GUARINO'S LIBERTY INTEREST

Defendants assert that Judge Guarino had no liberty interest in his assignment pursuant to the Fourteenth Amendment of the United States Constitution. In the alternative, defendants assert that Judge Guarino was not deprived of any liberty interest because there was nothing in the language of the Order of November 10th that specifically harmed Judge Guarino's standing in the community or that charged him with dishonesty, immorality or misconduct. Defendants also assert that any implication from the Order of November 10th that it was a sanction for misconduct was dispelled by the language of the court's per curiam order issued four months later, on March 10, 1993. From the per curiam order, which is quoted above, the defendants cite the following:

[The Order of November 10th] is without prejudice to the eligibility of Judge Guarino for assignment ... and is in no way to be interpreted as a reflection on Judge Guarino's long record of service as a Judge of the Court of Common Pleas or as a sanction or form of punishment against Judge Guarino.

Defendants further assert that Judge Guarino was given a full opportunity to clear his name at the show cause hearing before the Pennsylvania Supreme Court on March 9, 1993. Lastly, defendants assert that the per curiam order of the Pennsylvania Supreme Court issued on March 10, 1993, did clear his name.

■ As set forth in *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976), a liberty interest that is protected by the procedural guarantees of the Fourteenth Amendment arises when a person's legal status under state law is altered, and that alteration is combined with a defamation. To be actionable under 42 U.S.C. § 1983 and the Fourteenth Amendment, the defamation must occur in the course of the denial or deprivation of a property right. *Id.* at 710, 96 S.Ct. at 1165.

■ When deprived of a liberty interest, a person must be afforded an opportunity to clear his or her name. *Board of Regents v. Roth,* 408 U.S. 564, 573 n. 12, 92 S.Ct. 2701, 2707 n. 12, 33 L.Ed.2d 548 (1972).

As determined above, Judge Guarino was deprived of a property right under the Fourteenth Amendment. In the course of this deprivation, he was also deprived of a liberty interest. His removal occurred when he was on the bench, awaiting the jury verdict in a criminal trial and presiding over a major felony trial. He was publicly forced to leave the bench without taking the jury verdict in the first criminal trial, or finishing the major felony trial before him. Precluded from concluding any pending matters, he was forced to state in open court that he was unable to conduct hearings on post-trial motions, violations of probation and sentencings that had been scheduled for later that afternoon and for which attorneys were already present in the courtroom. He complied with the Order of November 10th, made his announcement, and left the courtroom, as he testified, "mortified" and "put to shame."

With no prior warning nor pretermination opportunity to defend himself against the action of Mr. Justice Larsen, nor even a statement of any charges against him, Judge Guarino faced the news media, his family and friends. His wife heard a radio report that he had been removed from the bench before he arrived home to tell her in person. His family and friends asked "What did you do?"

Since removing Judge Guarino from the bench, defendants have not reassigned him to serve as a senior judge. They have not issued any charges against him. It was not until four months later and approximately one month after Judge Guarino filed this action in federal court that the Pennsylvania Supreme Court issued its per curiam order

of March 10, 1993, at last setting forth a basis for Judge Guarino's removal.

■ The procedure utilized in removing Judge Guarino from the bench was a drastic one. As testified by defendant Nancy M. Sobolevitch, Court Administrator for the Administrative Office of the Pennsylvania Courts, the procedure had been used only once before. In that case, the Pennsylvania Supreme Court removed a senior judge from the bench at mid-day after that judge had received a target letter from the United States Attorneys' Office in connection with a federal grand jury investigation of allegations that he had accepted a bribe from the roofers' union.

Judge Guarino was removed from the bench at mid-day in mid-trial. In view of its only prior use in connection with a judge targeted in a federal grand jury bribery investigation, the procedure itself broadcast that Judge Guarino had been removed because of some criminal or other outrageous misconduct. Defendants cannot now be heard to say that Judge Guarino was not defamed simply because Mr. Justice Larsen in issuing his Order of November 10th failed to give any reasons for his removal of Judge Guarino.

The Pennsylvania Supreme Court's per curiam order of March 10, 1993, does nothing to dispell the implication that Judge Guarino was removed from the bench as a sanction for some misconduct. In its per curiam order, the Pennsylvania Supreme Court states that Judge Guarino was removed on the basis of unanswered allegations in *Levy*. Judge Guarino, however, testified before this Court at the Rule 65(a)(2) hearing held on March 11, 1993, that he did not violate the agreement made in *Levy*, that he did follow the procedure outlined in the stipulation and two supplemental statements filed in *Levy*, and that he did not violate the due process rights of the any members of the voir dire appearing before him.

On the basis of evidence presented at the Rule 65(a)(2) hearing before this Court on March 11, 1993, this Court concludes that defendants have defamed Judge Guarino in the process of a deprivation of his property right under the Fourteenth Amendment, and

have failed to provide him with a constitutionally adequate opportunity to clear his name. This Court, therefore, will declare that defendants have deprived Judge Guarino of his liberty interest without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States.

## D.  CONCLUSION

■ Judge Guarino has requested compensatory and injunctive relief. In this action, monetary damages are prohibited by judicial immunity. *Pulliam v. Allen*, 466 U.S. 522, 543, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984). Monetary damages, therefore, will not be ordered against the individual defendant Justices of the Pennsylvania Supreme Court.

■ The doctrine of judicial immunity extends to those nonjudicial officials whose activities are integrally related to the judicial process. *See Smith v. Rosenbaum*, 460 F.2d 1019 (3rd Cir.1972). In this matter, defendant Nancy M. Sobolevitch as Court Administrator acted pursuant to instructions of the Pennsylvania Supreme Court or pursuant to her understanding of the court's determination. Monetary damages, therefore, will not be ordered against her.

■ The doctrine of judicial immunity is not a bar, however, to prospective injunctive relief against a judicial officer under 42 U.S.C. § 1983. *Pulliam*, 466 U.S. at 541–42, 104 S.Ct. at 1981. Defendants having deprived Judge Guarino of his constitutional rights under the Fourteenth Amendment, this Court will enjoin defendants to reinstate Judge Guarino to the status of senior judge which he enjoyed pursuant to his assignment of November 1 through November 30, 1992, and prior to Mr. Justice Larsen's Order of November 10th. Further, this Court will enjoin defendants that they shall not deny approval of subsequent assignments of Judge Guarino as a senior judge on the basis of allegations that he has violated the constitutional rights of venirepersons during voir dire unless and until the allegations have been referred to the JIRB pursuant to Article V, Section 18 of the Pennsylvania Consti-

tution; and until the Pennsylvania Supreme Court has received the recommendation of the JIRB and has evaluated de novo the findings of the JIRB.

 Pursuant to 42 U.S.C. § 1988, attorney's fees are available in any action under 42 U.S.C. § 1983, even when damages are barred or limited by doctrines of immunity. *Pulliam*, 466 U.S. at 543, 104 S.Ct. at 1981–82. Judge Guarino will therefore be awarded reasonable attorney's fees in this matter.

### ORDER

AND NOW, this 16th day of April, 1993; plaintiff Judge Angelo A. Guarino having filed a motion for declaratory, injunctive and compensatory relief in this action brought pursuant to 42 U.S.C. § 1983; for the reasons set forth in this Court's Memorandum of April 16, 1993;

IT IS ORDERED: Compensatory relief in the form of monetary damages is DENIED.

IT IS FURTHER ORDERED: This Court DECLARES that the constitutional rights of Judge Guarino were violated by defendant Mr. Justice Larsen's Order of November 10, 1992, which Order terminated Judge Guarino from performing all judicial duties as a Senior Judge of the Court of Common Pleas of the First Judicial District of Pennsylvania;

IT IS FURTHER ORDERED: Defendants, Mr. Justice Rolf Larsen, Mr. Justice Nicholas P. Papadakos, Mr. Justice Ralph J. Cappy, Mr. Chief Justice Robert N.C. Nix, Jr., Mr. Justice John P. Flaherty, Mr. Justice Frank Montemuro, Mr. Justice Stephen A. Zappala, and Nancy M. Sobolevitch as Court Administrator are herewith ENJOINED to reinstate Judge Guarino to the status of senior judge he enjoyed pursuant to his assignment for the term of November 1 through November 30, 1992, and of which he was deprived, in violation of his constitutional rights, on November 10, 1992, by order of Mr. Justice Larsen of the Pennsylvania Supreme Court.

IT IS FURTHER ORDERED: Defendants are herewith ENJOINED that they shall not deny approval of subsequent assignments of Judge Guarino as a senior judge of the Court of Common Pleas of the First Judicial District of Pennsylvania on the basis of allegations that Judge Guarino has violated the constitutional rights of venirepersons during the process of selecting a jury, unless and until such allegations against Judge Guarino are referred to the Judicial Inquiry and Review Board pursuant to Article V, Section 18 of the Pennsylvania Constitution, and the recommendation of the JIRB has been received and evaluated de novo by the Pennsylvania Supreme Court.

IT IS FURTHER ORDERED: Defendants shall pay all reasonable attorney's fees of Judge Guarino.